397 A.2d 518.

NINA HARTT *vs.* KENNETH HARTT.

FEBRUARY 7, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J. This is an appeal by a respondent husband from a Family Court decree holding him in contempt for failure to pay $1,200 in counsel fees. The fees had been ordered in connection with two decrees holding the husband in contempt for failure to make support payments to his former wife under the Uniform Reciprocal Enforcement of Support Act (URESA) G.L. 1956 (1969 Reenactment) §15-11-1.

The facts, although complex, are undisputed. The named parties are Kenneth and Nina Hartt, a husband and wife who were divorced in Missouri in 1965 by a decree under which Kenneth was ordered to pay child support for their four children. After the divorce Nina moved to New York and Kenneth moved to Rhode Island. In 1968 Nina filed a petition under the New York Uniform Support of Dependents Law seeking increased support payments. As a result of that petition a decree was entered in the Rhode Island Family Court on December 11, 1968, under URESA ordering Kenneth to pay the increased support payments. This original decree was thereafter modified a number of times by successive decrees increasing the amount of payments due. The modifications are reflected in the decrees entered by the Family Court on August 18, 1969; January 20, 1973; and April 20, 1974.

By the decree of April 20, 1974.[1] Kenneth was found to be in arrears in the sum of $1,505.71 under the terms of the January 20, 1971 and the March 1, 1973 decrees. He was ordered to pay that sum forthwith, as well as $750 in counsel fees for the bringing of the action, and $46.95 in costs. The monthly support payments were also increased. The report does not indicate that an appeal was taken from this order.[2]

---

[1]Both April and May are referred to in the decree. Since subsequent orders uniformly refer to this decree as having been entered in April, we shall use that date.

By an order of a master dated September 20, 1974, Kenneth was adjudged in contempt on three grounds.[3] He had failed to pay the $1,505.71 arrearage, the $750 counsel fees, and the increased monthly payments all ordered under the April 1974 decree. In order to permit Kenneth to purge himself of contempt, the master ordered him to pay the arrearage to Nina, and the $750 counsel fees to Nina's attorney. The master also ordered that Kenneth pay an additional $750 in counsel fees for the bringing of the second petition, thereby making a total of $1,500 in counsel fees and $1,505.71 in arrearages to be paid within 30 days. The master assigned the case to the reciprocal calendar to June 29, 1976 for a determination of whether Kenneth had complied with the order. As a result of continuances, however, the case was not heard until October 28, 1976. On July 21, 1976, Kenneth filed a motion to vacate all orders of the Family Court awarding attorney's fees. Upon denial of the motion by a master, Kenneth requested a review by a Family Court justice pursuant to §8-10-3.1(g), as amended by P.L. 1977, ch. 68, §1. The Family Court affirmed the master's order and denied and dismissed the appeal in a decree dated October 5, 1976.[4] No appeal was taken to this court from that decree, although one was provided for in §§15-11-31 and 8-10-3.1(g), as amended by P.L. 1977, ch. 68, §1.

---

[2]A judgment of contempt for failure to pay the $750 in counsel fees ordered under the April 1974 decree was entered by a Family Court justice on April 14, 1975 and no appeal was taken therefrom. The appeal in the instant case is from a judgment of contempt entered by a master on October 28, 1976, and affirmed by a justice of the Family Court on November 29, 1976, finding Kenneth, *inter alia,* in contempt for failure to pay $750 ordered by the April 1974 decree.

[3]This order is undated, but the context of the decision indicates that it was rendered on September 20, 1974. It is also referred to in subsequent decrees as the order of September 20, 1974. See Paragraphs 3 and 4 of the November 29, 1976 decree.

[4]An identical decree dated August 11, 1976 is in the record. Since the final decree appealed from refers to this decree as the decree of October 5, 1976, we shall do likewise.

On October 28, 1976,[5] Kenneth was adjudged in contempt for failure to pay $1,200 of the $1,500 counsel fees ordered as purging conditions under the September 1974 decree. The parties stipulated in the October decree that Kenneth had paid $300 to Nina's attorney. The record does not indicate whether the arrearage of $1,505.71 was paid in compliance with the order of September 20, 1974. No issue with respect to this sum is raised on this appeal. Sentencing was set down for November 8, 1976, but was apparently stayed pending a review of the master's order by a Family Court justice, although there is no order in the record to this effect. *See* §15-11-31.

On November 29, 1976, a decree was entered by a Family Court justice denying Kenneth's appeal and affirming the master's judgment of contempt. The justice found that the fees were ordered under the April 1974 and September 1974 decrees as part of the conditions to permit Kenneth to purge himself of contempt. The matter is now before us on appeal from the judgment of contempt pursuant to §15-11-31.

Kenneth contends in substance that the powers of the Family Court are purely statutory, and there being no provisions under URESA for the award of counsel fees in this type of proceeding, any order awarding such fees is in excess of the court's jurisdiction. We are of the opinion that the order is not in excess of the court's jurisdiction and that this argument presents an assertion of error rather than a lack of jurisdiction on the part of the Family Court to enter such an order.

Generally, on review of a judgment of civil contempt for disobeying an order of a court with jurisdiction of the parties and of the subject matter, a party will not be permitted to urge in defense of his alleged misconduct that the court erred

---

[5]This decree is not in the record. Its contents were determined from notations in the docket sheet and references in the transcript of November 16, 1976.

in entering the order.[6] *Brown* v. *Brown,* 114 R.I. 117, 329 A.2d 200 (1974); *Dupras* v. *Dupras,* 103 R.I. 239, 236 A.2d 260 (1967); *Ciallella* v. *Ciallella,* 81 R.I. 320, 103 A.2d 77 (1954); *McAuslan* v. *McAuslan, 34 R.I. 462, 83 A. 837 (1912); Starkweather* v. *Williams,* 31 R.I. 134, 76 A. 662 (1910); *see also Walker* v. *City of Birmingham,* 388 U.S. 307, 87 S. Ct. 1824, 18 L. Ed. 2d 1210 (1967); *United States* v. *United Mine Workers,* 330 U.S. 258, 67 S. Ct. 677, 91 L. Ed. 884 (1947); *Menard* v. *Woonsocket Teachers' Guild–AFT 951,* 117 R.I. 121, 363 A.2d 1349 (1976). This is really another statement of the rule that a valid final judgment, even though erroneous, is not subject to collateral attack. 1B Moore, *Federal Practice* ¶0.405[4.-1] at 637; 9 *id.* ¶110.13[4], 168 n.31 (2d ed. 1948); *see Metts* v. *B.B. Realty Co.,* 108 R.I. 55, 271 A.2d 811 (1970).

Subject to certain exceptions not here applicable,[7] however, a party charged with contempt for violating a court order may defend a disregard of that order by showing it was void for lack of jurisdiction. *Mayer* v. *Mayer,* 36 Del. Ch. 457, 132 A.2d 617 (1957); 1B Moore, *supra,* ¶0.405[4.-1] at 635.

We conclude that at the time the decrees ordering attorney's fees were entered, the Family Court had jurisdiction both of the parties and of the subject matter. Although the Family Court is a tribunal whose jurisdiction is limited to those powers expressly conferred upon it by statute, *Naughton* v. *Goodman,* 117 R.I. 113, 363 A.2d 1345 (1976), in the instant case the Family Court's jurisdiction over the parties was acquired by proper service and its jurisdiction over the subject matter expressly conferred by

---

[6]Two notable exceptions are recognized where the court's action involves a plain usurpation of power, 7 Moore, *Federal Practice* ¶60.25[2] at 303 (2d ed. 1948), or where the court proceeds in such an arbitrary or improper manner that its action may be said to constitute a denial of due process. *Id.* at 309.

[7]See discussion of *United States* v. *United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947) and other cases in Annot, 12 A.L.R.2d 1059 §§5,6 (1950).

§15-11-15. Whether the court erred in the exercise of its power of contempt by awarding attorney's fees as a purging condition is a question we may not address on this appeal, which brings before us only the decree which was entered in the petition to adjudge the husband in contempt. *Heroux* v. *Heroux,* 59 R.I. 212, 194 A. 741 (1937).

Even though jurisdiction over the subject matter and the parties exists, a final order may nevertheless be susceptible of collateral attack when the court has exceeded its jurisdiction in rendering it. This basis of collateral attack has been recognized by a number of state and federal courts, and by the Restatement. *E.g., Arenas* v. *United States,* 95 F.Supp. 962, 970 n.23 (S.D.Cal. 1951), *aff'd,* 197 F.2d 418 (9th Cir. 1952); *Rosentiel* v. *Rosentiel,* 278 F.Supp. 794 (S.D.N.Y. 1967); *In re Wooley's Estate,* 96 Vt. 60, 117 A. 370 (1922); *Commonwealth ex. rel. Roviello* v. *Roviello,* 229 Pa.Super. 428, 323 A.2d 766 (1974); *see Developments in the Law – Res Judicata,* 65 Harv. L. Rev. 818, 851 (1952); Annot. 12 A.L.R. 2d 1059, §2 at 1066 (1950); 17 Am.Jur.2d *Contempt* §42 (1964); Restatement *Judgments* §10(e) at 58 (1942). These rulings have been criticized on the ground that an allowance of a collateral attack under such circumstances is an erosion of the *principles of res judicata. 1B Moore, supra,* ¶0.405[4.-1] at 648-49 n.41. ("The policy against a competent court acting beyond its jurisdiction can seldom outweigh society's interest in preserving judicial law and order." *See* Cox, *The Void Order and the Duty to Obey,* 16 U.Chi.L.Rev. 86, 90-92 (1948) ("[T]he Court seems to have extended the concept of jurisdiction of the subject matter into areas where the propriety of its application is open to question.")

The application of the above rule has necessarily required the drawing of distinctions between subject matter jurisdiction, excess of jurisdiction, and mere error. These distinctions have often proved difficult to draw. The meaning of the term "excess of jurisdiction" has been especially elusive. An order in excess of jurisdiction in the context of collateral attack has been defined as one which the court has not the

power under any circumstances to make or render. *In re Wooley's Estate, supra.* Such excess of authority or power is said to be more akin to a want of jurisdiction over the subject matter. 1 Freeman, *Judgments* §354 at 734 (1925), than to mere error. *Robrock* v. *Robrock,* 105 Ohio App. 25, 151 N.E.2d 234 (1956). As a practical matter, however, once a court has jurisdiction over the subject matter and the person, it is virtually impossible to distinguish acts in excess of jurisdiction from mere error. *State ex. rel. Missouri Pacific Railroad* v. *Moss,* 531 S.W.2d 82 (Mo.Ct.App. 1975).

The Supreme Court of California noting the confusion in its case law has stated that the term "lack of jurisdiction" has both a broad and narrow connotation. In *Pacific Mutual Life Insurance Co.* v. *McConnell,* 44 Cal.2d 715, 285 P.2d 636 (1955), the court drew a distinction between lack of jurisdiction for purposes of collateral attack and for purposes of review by writs of prohibition or certiorari:

> "It is the general rule that a final judgment or order is res judicata even though contrary to statute where the court has jurisdiction in the fundamental sense, i.e., of the subject matter and the parties. In the consideration of problems arising in this field it should be kept in mind that there is a difference between lack of jurisdiction in the fundamental sense, which is ordinarily essential for collateral attack, and the broader meaning of the term 'lack of jurisdiction' when used in determining the availability of prohibition or certiorari to review an order or judgment. Some cases involving collateral attack have unfortunately failed to recognize this distinction." *Id.* at 725, 285 P.2d at 641.

The court went on to cite *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 287-91, 109 P.2d 942, 947-49 (1941), which held that for purposes of a writ of prohibition, the definition of jurisdiction included an act by a court in excess of its jurisdiction as well as jurisdiction over the subject matter and parties. An examination of the examples used in *Abelleira* indicates that a broad definition of lack of

jurisdiction is used in the context where writs of prohibition or certiorari are sought.[8]

The United States Supreme Court has recognized a distinction between an order issued in excess of jurisdiction and a complete lack of jurisdiction over the subject matter, at least for the purposes of judicial immunity. In *Bradley* v. *Fisher,* 90 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872), the Court offered the following distinction:

> "A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences [would be] entirely wanting in the court * * *. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by law made an offence, and proceed to the arrest and trial of a party charged with such act, * * * those acts would be in excess of his

[8]Rhode Island similarly permits review by writs of prohibition or certiorari on the basis that the inferior court exceeded its jurisdiction. *Rogers* v. *Rogers,* 98 R.I. 263, 201 A.2d 140 (1964); *Swajian* v. *District Court,* 91 R.I. 403, 164 A.2d 311 (1960); *McLaughlin* v. *McLaughlin,* 44 R.I. 429, 117 A.2d 649 (1922).

jurisdiction * * * [and] these are particulars for his juridicial consideration, whenever his general jurisdiction over the subject matter is invoked." *Id.* at 351-352, 20 L.Ed. at 651.

A claim that a judge exceeded his jurisdiction therefore will not suffice to show a clear absence of jurisdiction over the subject matter required to impose civil liability in damages. Thus, in this area, the Supreme Court has used only the narrowest definition of lack of jurisdiction. Later cases have also followed this definition. *See Stump* v. *Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson* v. *Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

Many courts have also applied the same narrow definition of absence of jurisdiction by limiting collateral attacks to instances where the court lacked jurisdiction over the subject matter and the parties in the fundamental sense. E.g., *Pacific Mutual Life Insurance Co.* v. *McConnell, supra,* cited with approval in *Armstrong* v. *Armstrong,* 15 Cal.3d 942, 544 P.2d 941, 126 Cal.Rptr. 805 (1976); *Joseph* v. *Joseph,* 336 Ill.App. 258, 83 N.E.2d 600 (1948); *Kriesel* v. *Kriesel,* 35 Wis.2d 134, 150 N.W. 416 (1967).

Indeed, the thrust of the Supreme Court decisions has been decidedly towards restricting the area of collateral attack. 1B Moore, *supra,* ¶0.405[4.-1] at 649. In *Durfee* v. *Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1983), the Court insulated a judgment from collateral attack even when the challenge was based on a claim that a basic jurisdictional fact, namely the location of land within the state, had been wrongly determined. In passing upon this contention, the Court observed:

> "It is argued that an exception to this rule of jurisdictional finality should be made with respect to cases involving real property because of this Court's emphatic expressions of the doctrine that courts of one State are completely without jurisdiction directly to affect title to land in other States. This argument is wide

of the mark. Courts of one State are equally without jurisdiction to dissolve the marriages of those domiciled in other States. But the location of land, like the domicile of a party to a divorce action, is a matter 'to be resolved by judicial determination.' *Sherrer* v. *Sherrer*, 334 U.S., at 349. The question remains whether, once the matter has been fully litigated and judicially determined, it can be retried in another State in litigation between the same parties. Upon the reason and authority of the cases we have discussed, it is clear that the answer must be in the negative." *Id.* at 115, 84 S.Ct. at 247, 11 L.Ed.2d at 193.

Thus, when a court of competent jurisdiction has decided the jurisdictional facts in its favor, another court in a collateral proceeding has no power to inquire into that determination.

In the case at bar, whether the broader or more narrow definition of jurisdiction is used, clearly the Family Court had jurisdiction over the parties and the subject matter, and it had the power to render judgment in the particular case. The Family Court certainly had the right to consider the question of contempt and also had the right to consider the entry of an order for counsel fees by way or purging the husband from contempt. §§15-11-25(c); 8-6-1; 8-10-38; *Ciallella* v. *Ciallella, supra.* In this instance, the contentions of the husband all relate to the appropriate exercise of power as opposed to the absence of power.

Once a judgment has become final, it is a violation of the principles of res judicata to allow a collateral attack on the basis of error, even though the error is egregious. *See Kriesel* v. *Kriesel, supra.* We are in agreement with the Supreme Court that "[i]t would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act

should not be so inconclusive as to foster experimentation with disobedience." *Maggio* v. *Zeitz,* 333 U.S. 56 at 69, 68 S. Ct. 401 at 408, 92 L.Ed. 476 at 487 (1948). Indeed, the Supreme Court has refused to allow a collateral challenge on constitutional grounds where the parties who had failed to avail themselves of orderly judicial review sought to raise the constitutional issue upon proceedings to adjudge in contempt. *Walker* v. *City of Birmingham, supra.* This holding was rendered even in the face of arguments that an order based upon an unconstitutional statute was a nullity.

Having found that the Family Court had jurisdiction to issue the orders, we limit our review to a determination of whether the acts or acts for which the penalty was imposed could constitute contempt. *Stoner* v. *Stoner,* 163 Conn. 345, 307 A.2d 146 (1972). We conclude that there is no error in the Family Court judgment holding Kenneth in contempt, since Kenneth failed to comply with valid and specific court orders without establishing inability to perform or some other justification for noncompliance. *See Andrews* v. *Andrews,* 134 Vt. 47, 349 A.2d 239 (1975).

We need not consider Kenneth's remaining arguments which are likewise addressed to alleged errors in the decrees already determined to be insulated at this point from judicial review.

The respondent's appeal is denied and dismissed, the judgment of the Family Court is affirmed, and the case is remanded to the Family Court.

*Kirshenbaum & Kirshenbaum, Alfred Factor,* for Petitioner.

*McKinnon & Fortunato, Stephen J. Fortunato, Jr., Amy R. Tabor,* for Respondent.