Richard BOGOSIAN et al.

v.

Michael VACCARO et ux.

No. 78–243–Appeal.

Supreme Court of Rhode Island.

Nov. 25, 1980.

Richard P. Kelaghan, Providence, for plaintiffs.

Toro Law Associates, Inc., Eugene F. Toro, Mortimer C. Newton, Providence, for defendants.

OPINION

KELLEHER, Justice.

This is a Superior Court civil action in which the plaintiffs, Richard K. and Paul Bogosian (the Bogosians), are seeking a real estate brokerage commission of $9,000. The defendants, Michael and Virginia Vaccaro (the Vaccaros), are husband and wife. The agreement involved the sale of business property situated in the town of East Greenwich and known as the Railroad Inn. The Vaccaros concede that the Bogosians presented the requisite ready, willing, and able buyer but contend that the brokerage agreement they signed is a nullity because at the time of its execution Michael Vaccaro was civilly dead. A justice of the Superior Court, after considering the evidence presented before him, rejected this defense and found for the Bogosians. In affirming the trial justice's decision, we would paraphrase Mark Twain's words and note that the report of Michael's death is "somewhat exaggerated."

To place the Vaccaros' defense in its proper perspective, we would first point out that this is not the first time Michael has been before us. Earlier, on January 19, 1973, we rejected Michael's appeal following his conviction by a Superior Court jury on February 9, 1971, of the June 26, 1970 murder of a Judith Dionne. Subsequently,

on February 23, 1971, Michael received a life sentence. *See State v. Vaccaro*, 111 R.I. 59, 298 A.2d 788 (1973). When the Vaccaros and the Bogosians in the summer of 1971 entered into the brokerage agreement, the life sentence had been imposed, and Michael was an inmate at the Adult Correctional Institutions (ACI) awaiting our consideration of his appeal.

The Vaccaro defense is based upon two provisions of G.L. 1956 (1969 Reenactment) chapter 6 of title 13. Section 13–6–1 in essence provides that any person imprisoned in the ACI for life shall, "at the time of such conviction," be deemed to be dead "in all respects" with regard to "all rights of property, to the bond of matrimony and to all civil rights and relations, of any nature whatsoever * * * ." Another proviso of § 13–6–1 specifies that the matrimonial bond shall not be dissolved nor will the property rights of the convict's spouse be impaired or terminated except by way of a properly obtained divorce decree. The second statute relied on by the Vaccaros is § 13–6–3. This enactment stipulates that no person who is sentenced to imprisonment at the ACI shall have the power, during the term of imprisonment, to make a will or convey his property unless permission is obtained from the Superior Court.

The trial justice, in rejecting this "civilly dead" defense, ruled that § 13–6–1 was intended to be a limitation on the assertion of any rights by a prisoner serving a life sentence rather than a shield that would insulate him or her from civil liability. Although we agree with the trial justice's conclusion on this facet of the appeal, our rationale differs somewhat from his.

Section 13–6–1 specifies that the mantle of civil death falls upon a person sentenced to life imprisonment "at the time of such conviction." However, in actuality, a determination that a person has been imprisoned for life cannot be made until a final judgment of conviction has been entered. Thus, we hold that the civil–death proviso found in § 13–6–1 cannot be triggered until such time as there has been a final judgment of conviction. In *State v. Macarelli*, 118 R.I. 693, 375 A.2d 944 (1977), we pointed out that a judgment of conviction is not final so long as the case is pending on appeal. It is clear from the chronology set forth earlier in this opinion regarding the time of the murder trial and the imposition of sentence that the brokerage agreement was executed approximately a year and a half before Michael's conviction became final. Consequently, the Vaccaros gain no benefit from the provisions of § 13–6–1.

The Vaccaros fare no better with the provisions of § 13–6–3 than they did with § 13–6–1. Comparing the language of § 13–6–1 with the terms of § 13–6–3, we find that each clearly serves a separate statutory purpose. If the individual is given a life sentence, such a recipient is civilly dead and by the dictates of § 13–6–1 incapable of conveying anything. Obviously, the permissive portions of § 13–6–3 refer to a prisoner who receives something less than a life sentence. Such an individual cannot be equated with the civilly dead referred to in § 13–6–1. Even if § 13–6–3 [1] were applica-

---

1. In Rhode Island, a convicted felon is subject to a third sanction. Amendment XXXVIII of the Rhode Island Constitution provides that no individual who is otherwise qualified to vote shall be permitted to vote "while serving a *prison sentence on final conviction of a felony* nor subsequent to such imprisonment until the franchise shall have been restored by an act of the general assembly." A felony is defined by statute, G.L. 1956 (1969 Reenactment) § 11–1–2 (1980 Cum.Supp.), as any criminal offense which at any given time carries with it a potential punishment of imprisonment for more than a year or of a fine in excess of $500 unless the statute indicates that the particular offense is

not to be considered a felony. Section 13–6–2, which preceded the adoption of amendment XXXVIII, provides that any felon who is imprisoned at the Adult Correctional Institutions "shall forever thereafter be incapable of being *elected to any office of honor, trust, or profit in this state and of acting as an elector therein*, unless such person be expressly restored to such privilege by act of the general assembly." In *Bailey v. Baronian*, R.I., 394 A.2d 1338, 1339, 1342 (1978), we pointed out that disenfranchisement of certain criminals has been a permanent fixture in our Constitution since its adoption in 1842 and the limiting language of § 13–6–2, insofar as it refers to incarceration at

ble, the Bogosians could still receive their commission because it was earned at the moment they produced the ready, willing, and able buyer. No conveyance was required. *Judd Realty, Inc. v. Tedesco*, R.I., 400 A.2d 952 (1979).

The defendants' appeal is denied and dismissed, and the judgment appealed from is affirmed.

the Adult Correctional Institutions, must yield to the constitutional mandate.

A look at the historical past indicates that the ancient Greeks were the first to strip criminals of their civil rights, including the right to appear in court, vote, make speeches, attend assemblies, and serve in the army. In due course, civil–disability laws became part of the legal systems in England, Europe, and the United States. Today, Rhode Island is one of a very small number of states that still retain civil–death statutes. *See generally*, Special Project, *The Collateral Consequences of a Criminal Conviction*, 23 Vand.L.Rev. 929 (1970).