May 8, 2018

**Supreme Court**

No. 2016-278-Appeal.
(PC 10-6627)

Dana Gallop                    :

        v.                     :

Adult Correctional Institutions et al.    :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Dana Gallop                :

v.                   :

Adult Correctional Institutions et al.     :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on February 14, 2018, on appeal by the plaintiff, Dana Gallop (plaintiff or Gallop), from an order entered in the Superior Court granting the State defendants' (defendants or the State) motion to dismiss based on G.L. 1956 § 13-6-1, Rhode Island's civil death statute.[1]

Before this Court, plaintiff argues that: (1) the trial court erred in ruling that the civil death statute required dismissal of the complaint; (2) the trial court erred because the civil death statute in Rhode Island, to the extent that it impairs a person's capacity to sue under 42 U.S.C. § 1983, is invalid under the Supremacy Clause of the United States Constitution; (3) any state law that precludes access to state remedies available to litigate claims for alleged

---

[1] General Laws 1956 § 13-6-1, also known as the civil death statute, provides:

> "Every person imprisoned in the adult correctional institutions for life shall, with respect to all rights of property, to the bond of matrimony and to all civil rights and relations of any nature whatsoever, be deemed to be dead in all respects, as if his or her natural death had taken place at the time of conviction.  However, the bond of matrimony shall not be dissolved, nor shall the rights to property or other rights of the husband or wife of the imprisoned person be terminated or impaired, except on the entry of a lawfully obtained decree for divorce."

violations of any federal rights under color of law is invalidated by § 1983; and (4) the trial court erred in ruling that this case was not a civil rights action and in failing to address plaintiff's motion for leave to file a second amended complaint. For the reasons set forth herein, we affirm in part and reverse in part, and vacate the judgment of the Superior Court.

**Facts and Travel**

The plaintiff has alleged that, on or about April 26, 2010, while he was being held as a pretrial detainee at the Adult Correctional Institutions (ACI), he was attacked by a fellow inmate, Ian Rosado (Rosado). As a result of this attack, plaintiff suffered lacerations and permanent scarring on his face. In his complaint, plaintiff alleges that Rosado, on the day before the attack, told defendant Matthew Galligan (Galligan), a correctional officer at the ACI, that he was going to attack plaintiff. The plaintiff has also alleged that Galligan informed various John Doe defendants of Rosado's planned attack, and that Galligan abandoned his post for eighteen minutes on April 26, 2010, in order to provide Rosado with an opportunity to assault plaintiff.[2]

On May 12, 2010, plaintiff was convicted of the following crimes, for which he was being detained: first-degree murder, felony assault, using a firearm when committing a crime of violence, carrying a pistol without a license, and possession of arms by a person convicted of a crime of violence or who is a fugitive from justice. He was subsequently declared a habitual offender. The trial justice sentenced plaintiff to two consecutive life sentences, plus an additional twenty-year sentence to be served consecutively to the second life sentence, two ten-year sentences to run concurrently with the first life sentence, and, as a habitual offender, to an

---

[2] These John Doe defendants are not before the Court. Having failed to identify them during discovery, plaintiff is precluded from proceeding against them. *See Ensey v. Culhane*, 727 A.2d 687, 690 (R.I. 1999) ("The complaint does refer to a number of unnamed state police officers who are characterized as John Does. Nevertheless, unless these John Doe defendants are named and served with process within a reasonable time after their identities become known, they may not be considered parties to the case.").

additional twenty-five-year sentence, to be served after the other sentences and to be served without the possibility of parole. Thereafter, on November 10, 2010, plaintiff filed an initial civil complaint alleging negligence on the part of defendants for the April 26, 2010 attack. The plaintiff then filed an amended complaint on April 12, 2013. The plaintiff timely appealed his conviction, and this Court affirmed the conviction. *State v. Gallop*, 89 A.3d 795 (R.I. 2014). Final judgment of conviction entered on May 2, 2014. The civil action proceeded in the ordinary course.

The day before trial was scheduled to commence, the trial justice *sua sponte* raised the issue of the civil death statute, in light of plaintiff's sentences of life imprisonment. The defendants immediately responded with a motion to dismiss the case in accordance with § 13-6-1, arguing that plaintiff was deemed civilly dead and that, therefore, his civil rights and property rights effectively were terminated. On July 12, 2016, plaintiff filed a motion for leave to file a second amended complaint, which proposed to add a claim for violations of plaintiff's constitutional rights under color of law. The defendants objected, arguing that it would cause undue delay, futility, and prejudice to defendants. The plaintiff also objected to defendants' motion to dismiss the case based on § 13-6-1, arguing that: (1) the civil death statute was not applicable to this case; (2) the civil death statute in Rhode Island is invalid under the Supremacy Clause to the extent that it impairs plaintiff's capacity to sue under § 1983; and (3) § 1983 invalidates any state law that precludes access to state remedies.

On July 28, 2016, the trial justice granted defendants' motion to dismiss based on the civil death statute, declaring that the Superior Court had "no jurisdiction to hear this case. Therefore, the complaint is dismissed." The trial justice did not address plaintiff's motion for leave to file a second amended complaint. The plaintiff timely appealed. Before this Court,

plaintiff argues that § 13-6-1 does not require dismissal of his complaint, and that the trial justice erred in failing to address his motion to file a second amended complaint.

## Standard of Review

A motion to dismiss under Rule 12(b)(1) of the Superior Court Rules of Civil Procedure "questions a court's authority to adjudicate a particular controversy before it." *Boyer v. Bedrosian*, 57 A.3d 259, 270 (R.I. 2012). This Court reviews a trial justice's decision on a Rule 12(b)(1) motion *de novo*. *Id.* In this instance, the Court "is not limited to the face of the pleadings. A court may consider any evidence it deems necessary to settle the jurisdictional question." *Id.*

This Court consistently has held "that the decision to grant or to deny a motion to amend a complaint is confided to the sound discretion of the hearing justice." *Harodite Industries, Inc. v. Warren Electric Corporation*, 24 A.3d 514, 529 (R.I. 2011). "[W]e afford 'great deference to the trial justice's ruling on a motion to amend.'" *Id.* (quoting *Catucci v. Pacheco*, 866 A.2d 509, 513 (R.I. 2005)). This Court "shall not disturb that decision unless it constitutes an abuse of discretion." *Normandin v. Levine*, 621 A.2d 713, 715 (R.I. 1993).

## Analysis

### The Civil Death Statute

The loss of civil status as a form of punishment is a principle that dates back to ancient societies. Gabriel J. Chin, *The New Civil Death: Rethinking Punishment in the Era of Mass Conviction*, 160 U. Pa. L. Rev. 1789, 1795 (2012). The ancient Greeks were among the first to divest criminals of their civil rights, "including the right to appear in court, vote, make speeches, attend assemblies, and serve in the army." *Bogosian v. Vaccaro*, 422 A.2d 1253, 1255 n.1 (R.I. 1980). The rationale behind the enactment of civil death legislation was originally based on the

principle that a person convicted of a crime was dead in the eyes of the law. *See* Chin, 160 U. Pa. L. Rev. at 1795. Rhode Island adopted its civil death statute in 1909. *See* G.L. 1909, ch. 354, § 59. By 1939, eighteen states still had civil death statutes in effect. Chin, 160 U. Pa. L. Rev. at 1796; *see also Civil Death Statutes–Medieval Fiction in a Modern World*, 50 Harv. L. Rev. 968, 968 n.1 (1937). While statutes imposing collateral consequences for convicted persons have almost all but vanished, New York, the Virgin Islands, and Rhode Island still retain civil death statutes for persons sentenced to life imprisonment. Chin, 160 U. Pa. L. Rev. at 1798; *See* § 13-6-1; N.Y. Civ. Rights Law § 79-a(1); V.I. Code Ann. tit. 14, § 92. Repeal is the province of the Legislature.

At issue in this case is not whether the Superior Court has subject-matter jurisdiction over this claim, but whether the Court has authority to hear the merits of plaintiff's case in light of § 13-6-1. We answer this question in the negative. The civil death statute plainly states:

> "Every person imprisoned in the adult correctional institutions for life shall, with respect to all rights of property, to the bond of matrimony *and to all civil rights* and relations of any nature whatsoever, *be deemed to be dead in all respects*, as if his or her natural death had taken place at the time of conviction." Section 13-6-1 (emphasis added).

This Court reviews questions of statutory interpretation *de novo*. *See State v. Hazard*, 68 A.3d 479, 485 (R.I. 2013). "In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Id.* (quoting *Alessi v. Bowen Court Condominium*, 44 A.3d 736, 740 (R.I. 2012)). In cases such as this, "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* (quoting *Alessi*, 44 A.3d at 740).

We are of the opinion that § 13-6-1 is clear and unambiguous on its face and should be construed according to its plain and ordinary meaning, as intended by the Legislature.

*See Hazard*, 68 A.3d at 485. The statute unambiguously declares that a person such as plaintiff, who is serving a life sentence, is deemed civilly dead and thus does not possess most commonly recognized civil rights. Section 13-6-1. The Legislature has enumerated certain exceptions to § 13-6-1—"[h]owever, the bond of matrimony shall not be dissolved"—but there is no exception for claims impacting a prisoner's civil rights. We decline to read such an exception into the statute. Our interpretation of § 13-6-1 leads to the necessary and logical conclusion that the Superior Court had no authority to hear this case, because plaintiff's civil rights were extinguished by operation of law once his conviction became final when it was affirmed on May 2, 2014.

The plaintiff points to *Vaccaro*, and argues that his claim is not barred by § 13-6-1 because his conviction was not final until three-and-a-half years after he filed his initial complaint in this case. *See Vaccaro*, 422 A.2d at 1254. The plaintiff's reliance on *Vaccaro* is misplaced. *See id.* In *Vaccaro*, this Court held only that "the civil-death proviso found in [§] 13-6-1 cannot be triggered until such time as there has been a final judgment of conviction." *Id.* Similar to the defendant in *Vaccaro*, the chronology of this case does not benefit plaintiff. *See id.* Once plaintiff's conviction became final on May 2, 2014, the proviso in § 13-6-1 was triggered, thus rendering his case incapable of adjudication at the hearing held on July 28, 2016—over two years from the time plaintiff was deemed civilly dead. We also distinguish this case from *Vaccaro* based on the fact that it was Vaccaro, a defendant in a civil case, who sought to invoke immunity from a judgment ordering him to pay a real estate commission to the plaintiff, rather than a plaintiff seeking to assert a legal right. *Id.* at 1253-54. This Court specifically differentiated between the two scenarios, stating that "[§] 13-6-1 was intended to be

a limitation on the assertion of any rights by a prisoner serving a life sentence rather than a shield that would insulate him or her from civil liability." *Id.* at 1254.

## Subject-Matter Jurisdiction

Although the trial justice in this case raised the issue of the civil death statute *sua sponte*, on the eve of trial, which led to the dismissal of the case—a practice this Court generally frowns upon—she appropriately notified the parties and afforded them ample opportunity to brief the issue; and, in light of the conclusive effect of § 13-6-1 on this case, she was constrained to do so. However, the trial justice and both parties incorrectly identified the issue in this case as lack of subject-matter jurisdiction. The Superior Court has exclusive original jurisdiction over actions at law in which the amount in controversy is at least $10,000. *See* G.L. 1956 § 8-2-14. Clearly, "subject-matter jurisdiction is an indispensable requisite in any judicial proceeding." *Long v. Dell, Inc.*, 984 A.2d 1074, 1079 (R.I. 2009) (quoting *Newman v. Valleywood Associates, Inc.*, 874 A.2d 1286, 1288 (R.I. 2005)). "Subject-matter jurisdiction is the very essence of the court's power to hear and decide a case"; it has been defined as "jurisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things." *Id.* (quoting Black's Law Dictionary 931 (9th ed. 2009)). While the Superior Court had exclusive original subject-matter jurisdiction to hear the case at bar, whether the court has the authority to do so in light of the statutorily mandated disability is the crux of the issue.

This Court has drawn a distinction between subject-matter jurisdiction and the authority of the court to proceed. *See Chase v. Bouchard*, 671 A.2d 794, 795-96 (R.I. 1996); *Hartt v. Hartt*, 121 R.I. 220, 226, 397 A.2d 518, 521 (1979). In *Hartt*, this Court held that the Family Court acquired subject-matter jurisdiction over the matter in that case by statute, G.L. 1956 § 15-11-15, and thus any error assigned to that court was by an excess of jurisdiction and not by

acting without subject-matter jurisdiction. *Hartt*, 121 R.I. at 225-26, 397 A.2d at 521, 522. This

Court distinguished between subject-matter jurisdiction, acting in excess of jurisdiction, and

mere error:

> "These distinctions have often proved difficult to draw. The meaning of the term 'excess of jurisdiction' has been especially elusive. An order in excess of jurisdiction in the context of collateral attack has been defined as one which the court has not the power under any circumstances to make or render. * * * Such excess of authority or power is said to be more akin to a want of jurisdiction over the subject matter * * * than to mere error. * * * As a practical matter, however, once a court has jurisdiction over the subject matter and person, it is virtually impossible to distinguish acts in excess of jurisdiction from mere error." *Hartt*, 121 R.I. at 226-27, 397 A.2d at 522.

This Court went on to provide illustrative examples of acting in excess of jurisdiction rather than

acting without subject-matter jurisdiction:

> "Thus, if a probate court, invested only with the authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offen[s]es, jurisdiction over the subject of offen[s]es (would be) entirely wanting in the court * * *. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offen[s]es committed within a certain district, should hold a particular act to be a public offen[s]e, which is not by law made an offen[s]e, and proceed to the arrest and trial of a party charged with such act, * * * those acts would be in excess of his jurisdiction * * * (and) these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked." *Id.* at 228-29, 397 A.2d at 522-23.

Similarly, in *Chase*, this Court upheld its holding in *Hartt* distinguishing "between the absence

of [subject-matter] jurisdiction in the fundamental sense and the commission of an error for

which a court might be corrected on appeal, such as an evidentiary ruling or the failure to give

effect to a condition precedent or to a defense properly raised by a party to a litigation." *Chase*,

671 A.2d at 796. Ultimately in *Chase*, this Court declared void its previous caselaw holding that

- 8 -

the failure to comply with a condition precedent deprived the Superior Court of subject-matter jurisdiction, and instead held that:

> "The Superior Court of Rhode Island is a trial court of general jurisdiction. It is granted subject-matter jurisdiction over all cases unless that jurisdiction has been conferred by statute upon another tribunal * * * [and] the failure to file an account *did not and could not deprive the Superior Court of jurisdiction* to consider * * * the case on its merits." *Id.* (emphasis added).

In the case at bar, the Legislature has unambiguously mandated that persons serving a life sentence are prohibited from asserting civil actions. Section 13-6-1. The plaintiff does not fall under any exception to § 13-6-1, as prescribed by the Legislature; thus he is without recourse. Under our holdings in *Hartt* and *Chase*, it is clear that the Superior Court is vested with subject-matter jurisdiction, in the fundamental sense, over plaintiff's claims; however, it would have been error and an excess of jurisdiction for the Superior Court to consider plaintiff's claims when the Legislature has declared plaintiff to be civilly dead. We cannot imagine a case in which the Superior Court is divested completely of its statutorily-granted subject-matter jurisdiction. We do, however, hold that, in cases such as this, it would be error for the Superior Court to proceed. We conclude that the trial justice prudently and accurately dismissed the case.

### The Second Amended Complaint

On appeal, plaintiff argues that the trial justice erred in failing to address his motion to file a second amended complaint. This Court agrees. On July 12, 2016, after the trial justice raised the issue of the civil death statute *sua sponte*, plaintiff moved for leave to file a second amended complaint and provided a copy to the trial justice. Without addressing plaintiff's motion, the trial justice granted defendants' motion to dismiss the case on the basis of § 13-6-1. The plaintiff's proposed second amended complaint specifically named Galligan in his individual and official capacities and raised, for the first time, claims under 42 U.S.C. §§ 1983

- 9 -

and 1988; the Eighth and Fourteenth Amendments to the United States Constitution; the Rhode Island Constitution; and the Rhode Island Civil Rights Act.

The plaintiff attempted to add a § 1983 claim because, he contends, that statute precluded the Superior Court from dismissing his complaint based on his interpretation that § 1983 "invalidates any state law which stands in the way of any person filing suit to vindicate violation of federal protected rights" "under color of law[.]" The plaintiff has failed to produce any authority that holds that a state court is bound to hear a § 1983 action where this Court has deemed the party to be civilly dead. Rather, plaintiff simply argues that the phrase "or other proper proceeding for redress" set forth in § 1983[3] must include "not only violations of civil rights under color of law, but also *related* tortious acts associated with the violation of constitutional rights—and that any state law which prevents anyone from filing suit is invalid under the broad language of § 1983." (Emphasis in original.) The plaintiff's generic assertions are unaccompanied by jurisdictional support, which will be necessary on remand.

Under this Court's procedural law, plaintiff is prohibited from adding new claims and new parties six years after his injury and after the statute of limitations has run. *See DeSantis v. Prelle*, 891 A.2d 873, 878 (R.I. 2006) (holding that the plaintiff was barred from bringing a claim against a new party after the three-year statute of limitations had run). The practice of changing the entire nature of a case from a negligence claim to a civil rights action after the trial

---

[3] The plaintiff points to 42 U.S.C. § 1983, which provides, in relevant part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, *or other proper proceeding for redress* * * *." (Emphasis added.)

- 10 -

was scheduled to begin has been condemned by this Court. *See Faerber v. Cavanagh*, 568 A.2d 326, 330 (R.I. 1990) ("An addition of a new claim close to trial when discovery is essentially complete and trial strategy already planned invariably delays the resolution of a case, and delay itself may be considered prejudicial * * * especially where excessive delay has already occurred." (quoting *Andrews v. Bechtel Power Corporation*, 780 F.2d 124, 139 (1st Cir. 1985))). The trial justice correctly noted in her decision dismissing the case:

> "There was no 1983 claim pled or filed. This case was ready trial. It was ready trial on a negligence suit. The plaintiff did not plead any civil rights action. And I understand that we have very liberal pleading in our state. However, the fact is this case was a go for trial. It was a go on a negligence claim. And it was not a go on a civil rights claim. It's too late."

Nevertheless, we conclude that the trial justice should have addressed the plaintiff's second amended complaint before granting the defendants' motion to dismiss. Although we consistently have held "that the decision to grant or to deny a motion to amend a complaint is confided to the sound discretion of the hearing justice[,]" the trial justice is nonetheless required to rule on the motion. *Harodite Industries, Inc.*, 24 A.3d at 529. This Court cannot review the trial justice's decision granting or denying a motion to amend for abuse of discretion if the trial justice has not exercised that discretion. *See id.*; *see also Normandin*, 621 A.2d at 715. We are of the opinion that the plaintiff is entitled, at the very least, to a reasoned decision on his motion for leave to file an amended complaint.

## Conclusion

Accordingly, we vacate the judgment of the Superior Court and remand this case to the Superior Court with directions to hear and decide the plaintiff's motion to amend his complaint—upon the merits of which we take no position. The papers may be remanded to the Superior Court.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Dana Gallop v. Adult Correctional Institutions et al. |
| **Case Number** | No. 2016-278-Appeal.<br>(PC 10-6627) |
| **Date Opinion Filed** | May 8, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Ronald J. Resmini, Esq.<br><br>For Defendants:<br><br>Ariele Yaffee<br>Special Assistant Attorney General<br><br>Michael Field<br>Assistant Attorney General |