Roger A. PRATT

v.

Marion I. PRATT.

No. 80–509–Appeal.

Supreme Court of Rhode Island.

June 12, 1981.

Paul P. Baillargeon, Inc., Woonsocket, for petitioner.

Dianne Curran, Rhode Island Legal Services, Inc., Providence, for respondent.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a decree of the Family Court recognizing and enforcing a custody decree rendered by an Iowa court of equivalent jurisdiction. The facts underlying this controversy are as follows.

Roger A. Pratt (Roger) and Marion I. Pratt (Marion) were married on April 20, 1974, in Killeen, Texas, while Roger, an Army serviceman, was stationed there. Marion had two minor children by a previous marriage. Subsequently, pursuant to military transfer of Roger, the Pratt family moved to West Germany. The minor child of the parties was born in Heidelberg, West Germany, on April 21, 1976. The custody of this child is the subject of the instant appeal. Roger was later transferred to an Army base in Massachusetts, and the family resided there until December 1979.

At that time marital difficulties arose, as a result of which Marion left the Massachusetts residence with her three children and established a household in Muscatine, Iowa, where several of her relatives resided. She enrolled the two older children in school and arranged to receive welfare benefits through the local agency that administered Aid to Families with Dependent Children (AFDC).

Roger became aware of the location of his wife and children in Iowa and visited them in that state in December 1979, February 1980, and April 1980 for the purpose of persuading his wife to return to the marital domicile. During the visit of April 1980, Roger removed his son from Marion's apartment and brought him to the residence of Roger's own mother in Harrisville, Rhode Island. Since Roger's discharge from the service on May 22, 1980, he has continued to reside in that home.

Immediately thereafter, both parties commenced legal action in their respective states. Marion filed a petition for custody of the minor child in the Iowa District Court on April 30, 1980. Service of notice of the pendency of this petition was made upon Roger in Rhode Island on June 3, 1980. Roger commenced action for divorce and custody of the child in Rhode Island Family Court on April 18, 1980. Incident to his petition, Roger obtained an ex parte order awarding him temporary custody on that same date. Service of notice of the pendency of the Rhode Island petition was made on Marion in Muscatine, Iowa, on June 5, 1980. Roger entered a special appearance in the Iowa proceedings for the purpose of contesting jurisdiction. An order issued by a judge of the Iowa District Court for Muscatine on June 16, 1980, rejected Roger's challenge to the jurisdiction. Thereafter, a custody hearing was scheduled in Iowa on July 23, 1980, but Roger did not choose to attend. On August 14, 1980, prior to any final action in Rhode Island, the Iowa court awarded permanent custody of the child to Marion.

Armed with this decree, Marion traveled to Rhode Island and moved for enforcement

and recognition of the Iowa decree pursuant to the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA), G.L. 1956 (1969 Reenactment) §§ 15–14–1 through 15–14–26, as enacted by P.L.1978, ch. 185, § 1, and specifically in accordance with the terms of § 15–14–14 thereof. On November 3, 1980, the Family Court issued a decree recognizing and enforcing the Iowa decree and in accordance therewith awarded custody of the minor child of the parties to Marion. Roger appealed and was granted a stay of the order pending the determination of the appeal. Because of the exigencies relating to the status of the child, this matter was assigned for oral argument on February 9, 1981, and on February 11, 1981, an order was entered denying and dismissing Roger's appeal with a notation that an opinion would follow. This opinion sets forth the reasons for that order.

Since the UCCJA has been adopted recently in Rhode Island, and few cases have reached this court concerning the effect of this act upon the enforcement of foreign decrees, it would be well to state briefly the circumstances that gave rise to the adoption of this statute in thirty-five states.[1]

■ In a series of ambiguous opinions, the Supreme Court of the United States failed to give a definitive answer to the effect of the full-faith-and-credit clause[2] upon interstate custody decrees. *See May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); *New York ex rel. Halvey v. Halvey*, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947); *see also Kovacs v. Brewer*, 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1958). The expression of principle in these cases led to the conclusion that a state was not bound to give full faith and credit to the custody decree of a sister state in circumstances in which both parties contesting the right to custody were not served with process within the state; and if the state where enforcement of the foreign decree was

sought did give full faith and credit to such foreign decree, it would also have the concomitant duty to consider the modification thereof, *Halvey, supra*. The doctrine was succinctly stated in the comment to Restatement (Second) *Conflict of Laws* § 79, comment c at 238–39 (1971):

"*c. Effect of custody decree in other states.* Full faith and credit does not require that a custody decree be accorded greater effect in a sister State than it enjoys in the State of rendition. If the decree remains subject to modification because of changed conditions in the State of rendition, as will almost invariably be the case, the decree will similarly be modifiable in sister States. *New York ex rel. Halvey v. Halvey*, 330 U.S. 610 [67 S.Ct. 903, 91 L.Ed. 1133] (1947). For this reason, custody decrees do not enjoy the same extraterritorial effect as do unmodifiable judgments. At the least, the courts of a sister State will determine whether the custody provisions of the decree stand in need of modification because of changed conditions."

In sum, the courts of each state could give as little or no effect to the custody decrees of a sister state as they chose. Consequently, the matter of custody could be successively litigated in a number of different states, each court considering de novo the entire question relating to the best interests of the child, without reference to what had been done previously in a parallel jurisdiction. The effect of this doctrine has been eloquently stated in the Commissioners' Prefatory Note to the UCCJA.

"There is growing public concern over the fact that thousands of children are shifted from state to state and from one family to another every year while their parents or other persons battle over their custody in the courts of several states. Children of separated parents may live with their mother, for example, but one day the father snatches them and brings them to another state where he petitions

---

1. Ratner, *Procedural Due Process and Jurisdiction to Adjudicate*, 75 Nw.U.L.Rev. 363, 388 (1980).

2. U.S.Const. Art. IV, § 1.

a court to award him custody while the mother starts custody proceedings in her state; or in the case of illness of the mother the children may be cared for by grandparents in a third state, and all three parties may fight over the right to keep the children in several states. These and many similar situations constantly arise in our mobile society where family members are often scattered all over the United States and at times over other countries. A young child may have been moved to another state repeatedly before the case goes to court. When a decree has been rendered awarding custody to one of the parties, this is by no means the end of the child's migrations. It is well known that those who lose a court battle over custody are often unwilling to accept the judgment of the court. They will remove the child in an unguarded moment or fail to return him after a visit and will seek their luck in the court of a distant state where they hope to find—and often do find—a more sympathetic ear for their plea for custody. The party deprived of the child may then resort to similar tactics to recover the child and this 'game' may continue for years, with the child thrown back and forth from state to state, never coming to rest in one single home and in one community.

"The harm done to children by these experiences can hardly be overestimated. It does not require an expert in the behavioral sciences to know that a child, especially during his early years and the years of growth, needs security and stability of environment and a continuity of affection. A child who has never been given the chance to develop a sense of belonging and whose personal attachments when beginning to form are cruelly disrupted, may well be crippled for life, to his own lasting detriment and the detriment of society." Uniform Child Custody Jurisdiction Act, 9 U.L.A., Commissioners' Prefatory Note at 111–12.

In this context Rhode Island and thirty-four other states have enacted the UCCJA for the avowed purpose of avoiding jurisdictional competition and conflict with courts of other states in matters of child custody. This act set up criteria for the exercise of jurisdiction in child-custody disputes by the Family Court, § 15–14–4, and for the recognition and enforcement of out-of-state custody decrees, § 15–14–14. It also sets forth limitations and guidelines for the modification of a custody decree of another state, § 15–14–15. Thus, although a Rhode Island court may have the power to exercise jurisdiction over a custody dispute under constitutional limits of due process, it may decline to exercise jurisdiction because another forum is more appropriate, § 15–14–8, or it may decline to exercise jurisdiction by reason of the conduct of one of the parties to the dispute, § 15–14–9.

■ Applying these criteria to the facts of the case at bar, we examine the provisions of § 15–14–4[3] in order to determine

**3.** General Laws 1956 (1969 Reenactment) § 15–14–4, as enacted by P.L. 1978, ch. 185, § 1, reads as follows:

"(a) The family court has jurisdiction to make a child custody determination by initial or modification decree if:

"(1) the state of Rhode Island (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from Rhode Island because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in Rhode Island; or

"(2) it is in the best interest of the child that the family court assume jurisdiction because (i) the child and his parents, or the child and at least one (1) party, have significant connection with Rhode Island, and (ii) there is available in Rhode Island substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

"(3) the child is physically present in Rhode Island and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

"(4) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to

whether assumption of jurisdiction by the Iowa court was appropriate. This examination discloses that the Iowa court could exercise jurisdiction under the provisions of § 15–14–4(a)(2) [Iowa Code Ann. § 598A.3 1b (West 1946)], which allows a state court to exercise jurisdiction if it is in "the best interest of the child * * * because (i) the child * * * and at least one (1) party, have [a] significant connection with [the forum], and (ii) there is available * * * substantial evidence concerning the child's present or future care, protection, training, and personal relationships * * *." The statute further provides that the physical presence of the child within a state is not sufficient to confer jurisdiction upon its courts, § 15–14–4(b), nor is physical presence a prerequisite for exercising jurisdiction, § 15–14–4(c).

Iowa was the residence of the mother and her three dependent children, along with several members of the mother's extended family. The mother had obtained an apartment and had enrolled the older children in school. The family was receiving AFDC in Iowa, which provided monitoring of the family by a social worker. For four consecutive months prior to the filing of the petition in the case, the child had resided in Iowa. Consequently, the child and the mother had a significant connection with the State of Iowa, and substantial evidence concerning the child's past and future care was available in Iowa. Iowa's exercise of jurisdiction was substantially in accordance with § 15–14–4(a)(2).

Since the Iowa court exercised jurisdiction substantially in accordance with the act, the Family Court was bound to recognize and enforce the Iowa decree under the provisions of § 15–14–4.[4]

Roger further argues that the Iowa decree should not have been enforced by reason of the fact that the Iowa court did not have in personam jurisdiction over him. The short answer to this contention is that the UCCJA does not base the power of a court to hear and decide a child-custody controversy upon in personam jurisdiction over both parents. As pointed out by Mr. Justice Frankfurter in his concurring opinion in *May v. Anderson*, 345 U.S. at 535–36, 73 S.Ct. at 844, 97 L.Ed. at 1228:

"This Court does not decide that Ohio would be precluded from recognizing, as a matter of local law, the disposition made by the Wisconsin court [although there was no personal jurisdiction over the mother]. For Ohio to give respect to the * * * decree would not offend the Due Process Clause. Ohio is no more precluded from doing so than a court of Ontario or Manitoba would be, were the mother to bring the children into one of these provinces."

Rhode Island and its thirty-four sister states have accepted this interpretation of due process in custody-dispute cases and have essentially regarded these actions as quasi in rem or status proceedings within the limitations set forth in § 15–14–4. *See* Restatement (Second) *Conflict of Laws* § 79, comment a at 237–38 (1971). Physical

exercise jurisdiction on the ground that Rhode Island is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that the family court assume jurisdiction.
"(b) Except under paragraphs (3) and (4) of subsection (a), physical presence in Rhode Island of the child, or of the child and one (1) of the parties, is not alone sufficient to confer jurisdiction on the family court to make a child custody determination.
"(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."
The parallel provisions of the UCCJA as adopted in Iowa may be found in Iowa Code Ann. §§ 598A.1–25 (West 1946). Specifically the

criteria for exercise of jurisdiction are found in § 598A.3 and are substantially identical with the Rhode Island provisions.

4. Section 15–14–14 reads as follows:
"The courts of Rhode Island shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter or which was made under factual circumstances meeting the jurisdictional standards of the chapter, so long as this decree has been modified in accordance with jurisdictional standards substantially similar to those of this chapter."

presence of the parties, while desirable, is not essential to the exercise of jurisdiction nor, indeed, may it be sufficient appropriately to cause the court to exercise jurisdiction. *See Paolino v. Paolino*, R.I., 420 A.2d 830 (1980).

Moreover, in this case Roger, upon notice of the Iowa proceeding, challenged the jurisdiction of that court unsuccessfully. We have held in accordance with the long-standing federal rule that one who was present and participated in an initial judicial proceeding cannot collaterally attack the court's jurisdiction in a later enforcement proceeding; all challenges to jurisdiction by parties who were present in the initial proceeding must be by direct appeal. *American Surety Co. v. Baldwin*, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (1932); *Baldwin v. Iowa State Traveling Men's Association*, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931); *Hartt v. Hartt*, R.I., 397 A.2d 518, 523 (1979); 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3536 at 331 (1975). Under these principles, the Iowa judgment in regard to jurisdiction was final as to all issues actually litigated by the parties, subject only to the right of appeal which might have been prosecuted through the Iowa judicial system.

This rule of finality regarding issues litigated is consonant with the fundamental policies of the UCCJA. This principle "discourage[s] continuing controversies over child custody in the interest of greater stability of home environment * * *," § 15–14–2(a)(4), "avoid[s] relitigation of custody decisions * * * insofar as feasible," § 15–14–2(a)(6), and "facilitate[s] the enforcement of custody decrees of other states * * *," § 15–14–2(a)(7).

For the reasons heretofore stated, we issued our order on February 11, 1981, 426 A.2d 1323, denying and dismissing Roger's appeal. The decree of the Family Court is affirmed, and the papers in the case may be remitted to the Family Court.

SHEA, J., did not participate.