Shirley Tucker SILVA

v.

Ronnie Wayne TUCKER.

No. 84–503–Appeal.

Supreme Court of Rhode Island.

Nov. 20, 1985.

Joseph B. Carty, Jr., Providence, for plaintiff.

Francis J. Murray, Jr. (Asquith, Merolla, Anderson, Ryan & Wiley), Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a temporary order of the Family Court issued pursuant to the emergency-jurisdiction provision of the Uniform Child Custody Jurisdiction Act (UCCJA), G.L. 1956 (1981 Reenactment) § 15–14–4(a)(3)(ii). The facts and travel of the case are as follows.

Shirley Tucker Silva (Shirley) and Ronnie Wayne Tucker (Ronnie or husband) were divorced in Oklahoma in 1979. Shirley was granted custody of their two children subject to the visitation rights of Ronnie. Only the custody of one child, twelve-year-old Chad Clayton Tucker (Chad), is involved in this case. From 1978 to May 1982 Chad lived in Ohio with Shirley and made visits to his father, who was also in Ohio. In 1982 an Ohio court issued a change-of-custody decree in favor of Ronnie. The permanent order was entered on February 3, 1983, granting visitation rights to Shirley. The Ohio court made two other orders concerning this case—one on July 18, 1983, regarding Shirley's visitation rights and the other on May 17, 1984, concerning visitation-travel expenses. Between 1982 and July 1984 Chad lived in Ohio with Ronnie. Ronnie, a major in the Army, was then transferred to Leavenworth, Kansas, and Chad accompanied him. On August 4, 1984, Chad traveled to Rhode Island to visit his mother as provided in the Ohio order of July 8, 1983.

On August 21, 1984, while Chad was still in Rhode Island, Shirley filed a complaint in Family Court seeking temporary and permanent custody of Chad. In her complaint and accompanying affidavit, Shirley alleged that Ronnie had mistreated and physically abused Chad. Chad also filed an affidavit alleging physical abuse and stating that he was afraid to return to his father. Ronnie denied these allegations in his answer and asserted that under the UCCJA, the Family Court was without jurisdiction to hear the case.

The case was heard as an emergency matter on August 21, 1984. Chad told the trial justice during an in-camera interview that on one occasion about a year earlier his father had become very angry at him and "jacked" him against a wall—picked him up by the shirt and put him against the wall. Chad also stated that approximately three to four months earlier his father had picked him up by the head and pushed him around causing his jaw to lock. In addition, Chad said that he had been the victim of his father's bad temper and that his father would sometimes slap him with a karate-chop type of blow and throw him around. When asked if he was afraid to return to his father, Chad replied that he was.

After the attorneys had an opportunity to question Chad, the judge concluded that Chad was a "frightened young man" who had been mistreated and was afraid to return to his father. Limiting his decision to the temporary-emergency basis, the judge held that the court had emergency jurisdiction to grant a temporary custody order in favor of Shirley. In addition, the court restrained the parties from removing Chad from Rhode Island and assigned the case for a priority hearing. A full hearing has not yet been held because all proceedings in the Family Court were halted by the docketing of this appeal.

It should be noted that on August 20, 1984, a day before the complaint was filed,

Ronnie filed a motion in the Ohio court to adjudge Shirley in contempt for not returning Chad. Shirley was found in contempt on September 21, 1984.

Rhode Island adopted the UCCJA for the avowed purpose of avoiding jurisdictional competition and conflict with courts of other states in matters of child custody.[1] *Pratt v. Pratt,* —— R.I. ——, 431 A.2d 405, 408 (1981). As the Commissioner's Prefatory Note to the UCCJA states:

"The harm done to children by these experiences [the state-to-state movement of children by their parents in search of a favorable custody decree] can hardly be overestimated. It does not require an expert in the behavioral sciences to know that a child, especially during his early years and the years of growth, needs security and stability of environment and a continuity of affection." Uniform Child Custody Jurisdiction Act 9 U.L.A. 112 Commissioner's Prefatory Note (1979) (quoted in *Pratt,* —— R.I. at ——, 431 A.2d at 408).

The provisions of the act require courts to act in the best interest of the child, § 15–14–2. In construing the UCCJA and applying it to this case, we must promote these goals, § 15–14–2(b).

There are four jurisdictional bases under the UCCJA, § 15–14–4. The trial justice invoked and exercised only emergency jurisdiction; therefore, we are only concerned with one of them, namely, § 15–14–4(a)(3)(ii).

Section 15–14–4(a)(3)(ii) states:

"(a) The family court has jurisdiction to make a child custody determination by initial or modification decree if:

\*       \*       \*       \*       \*       \*

(3) the child is physically present in Rhode Island and \* \* \* (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or

**1.** All fifty states and the District of Columbia have adopted the Uniform Child Custody Juris- diction Act. Uniform Child Custody Jurisdiction Act, 9 U.L.A. 22–23 (1985 Cum.Supp.).

abuse or is otherwise neglected or dependent * * *."

■ Unlike other jurisdictional bases, emergency jurisdiction can be exercised solely on the child's presence in Rhode Island, §§ 15–14–4(a)(3)(ii), 15–14–4(b). When issuing a temporary emergency order, the court is not required to investigate the existence of other jurisdictional factors mentioned in § 15–14–4, nor must it apply other provisions such as § 15–14–7 (simultaneous procedures in other states) or § 15–14–9 (jurisdiction declined by reason of conduct). This in-depth inquiry is carried out after a full hearing and would have been conducted on a priority basis in this case if the appeal had not been filed. In exercising emergency jurisdiction, a court is limited to protecting the child until a full-scope procedure can be conducted.

■ The emergency-jurisdiction provision of the UCCJA "retains and reaffirms *parens patriae* jurisdiction * * * which a state must assume when a child is in a situation requiring immediate protection." Uniform Child Custody Jurisdiction Act § 3, 9 U.L.A. 124 Commissioner's Notes to paragraph (3) of subsection (a). As we stated in *In re Richard P.*, —— R.I. ——, ——, 451 A.2d 274, 278 (1982):

" 'Parens patriae,' which literally means 'the father or parent of the country,' is a concept that developed under the old English system whereby a court of equity, exercising the parental function of the Crown, could declare a child to be the ward of the Crown. Today, this concept signifies a philosophy whereby the state has a responsibility to act as a 'superparent' * * *."

The trial justice was careful in his decision to act within the confines of emergency jurisdiction. After considering the pleadings and accompanying affidavits, the trial justice interviewed Chad and concluded that sufficient facts existed to support an emergency issuance of a temporary order that restrained both parties from removing Chad from Rhode Island and which assigned the case for a priority hearing.

The order was a proper use of the *parens patriae* power of the court granted by the Legislature in § 15–14–4(a)(3)(ii).

In order to exercise emergency jurisdiction, the trial justice was only required to find that Chad was present in Rhode Island and that he had been subjected to or threatened with mistreatment or abuse, § 15–14–4(a)(3)(ii). No one disputed that Chad was present in Rhode Island, and the information available to the judge clearly demonstrated a need to protect Chad from further probable abuse.

The primary source of information concerning the abuse was Chad. Over sixteen pages of transcript were presented in which Chad described two specific instances of abuse and expressed a fear of further mistreatment if he was returned to his father. After allowing the attorneys an opportunity to speak with Chad, the trial justice concluded there was a need to protect this "frightened young man."

After the order was issued, Ronnie appealed to this court, and therefore there was no opportunity for the trial court to conduct a hearing and decide whether Rhode Island was the appropriate forum to issue a permanent decree modifying the Ohio decree. If the trial justice had gone further than the emergency order, he would have been obligated to consider the UCCJA in its entirety.

■ The husband insists, however, that a full investigation of the underlying facts, along with invocation of every provision of the UCCJA, is required before a trial justice may assume emergency jurisdiction. This assertion is based on the husband's view that the UCCJA's avowed purpose is to protect out-of-state decrees. Although it is true that the UCCJA was enacted to protect such decrees, this goal is pursued to eliminate the harmful effect that jurisdiction shopping has on the children who are the subject of the decrees. To follow the husband's suggested approach would thwart one of the ultimate purposes of the act and prevent courts from acting quickly

when an immediate order is necessary to protect a child.

For the reasons stated, we affirm the temporary-emergency order and remand the case to the Family Court for further proceedings.[2]

BEVILACQUA, C.J., did not participate.

---

**2.** In remanding this case for further proceedings, we are also mindful that since the emergency exercise of jurisdiction by the Family Court, Ronnie has been transferred to Army duty outside the continental limits of the United States. Upon remand, the Family Court may take into consideration this change of circumstance in its resolution of the issues that will be presented to the court.