Stephen J. Fortunato, Fortunato & Tarr, Warwick, Roderick A. Cavanagh, Wakefield, for plaintiff.

Stephen M. Prignano, Edwards & Angell, Providence, for defendant.

Burt A. JORDAN

v.

Ann JORDAN n/k/a Ann Asbell.

No. 89–380–Appeal.

Supreme Court of Rhode Island.

Feb. 18, 1991.

## OPINION

WEISBERGER, Justice.

This case comes before us on the appeal of the plaintiff, Burt A. Jordan, from an order entered in the Family Court denying the plaintiff's motion to enjoin the defendant, Ann Jordan n/k/a Ann Asbell, from proceeding in the Florida court on her motion for arrearages in child support. We affirm. The pertinent facts, insofar as can be ascertained from the rather disjointed record, are as follows.

Burt A. Jordan (Jordan) and Ann Jordan n/k/a Ann Asbell (Asbell) were granted a final divorce, following trial, on November 15, 1978, by a justice of the Circuit Court of the Twentieth Judicial Circuit in Collier County, Florida. At that time, the court reserved jurisdiction to determine all other issues, including property settlement, alimony and custody of the two minor children (Arthur, then aged six and Emily, then aged three). On August 16, 1979, the Florida court heard the testimony of a court-appointed psychiatrist, Dr. Thomas J. Kelly, relating to the topic of each parent's fitness for custody. The court also heard testimony relating to child support, alimony, and property distribution. Apparently, Jordan had been present during all the prior court proceedings regarding the divorce. However, on August 14, 1979, just

two days prior to the final hearing date, Jordan picked up the children for a scheduled visitation, and without the knowledge or consent of Asbell, traveled to Rhode Island where he filed a custody petition in the Rhode Island Family Court.

At this point Jordan's Florida attorneys moved to withdraw from the case, asserting that their differences with him were so irreconcilable that continued representation would be against his best interest. The trial justice was also apprised of Jordan's actions in leaving the jurisdiction and of his intention to have the Rhode Island Family Court issue an order "restraining anyone from removing the children from his custody in the state of Rhode Island." The Florida trial justice thereafter permitted Jordan's counsel to withdraw. After hearing the testimony of Dr. Kelly, the trial justice rendered a decision awarding custody of the minor children to Asbell.[1] The decision also granted Asbell child support, alimony, and attorney's fees, and an order was issued distributing the assets of the parties. According to the child-support provisions of the Florida judgment, Jordan was ordered to pay $200 per week per child. The Florida judgment further provided that Jordan pay Asbell $150 per week in alimony.[2]

In Rhode Island meanwhile, Jordan brought a miscellaneous petition in the Washington County Family Court pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), G.L.1956 (1988 Reenactment) chapter 14 of title 15. On August 14, 1979, he obtained a restraining order granting him temporary custody of the children subject to a subsequent review by the Family Court to determine whether Florida was exercising child-custody jurisdiction "substantially in conformity" with the UCCJA.

Asbell filed a special entry of appearance to contest the Rhode Island Family Court's subject-matter and personal jurisdiction.

On August 31, 1979, a hearing was held before a justice of the Rhode Island Family Court to resolve the jurisdiction issue and to assess the validity of the Florida proceedings. The Family Court justice, in considering the jurisdictional issue, determined that the Florida court, in proceeding with the custody hearing even after Jordan's attorney had withdrawn from the case, was not acting in the best interests of the children and therefore had not exercised jurisdiction "substantially in conformity with the UCCJA." Accordingly, the Family Court concluded that it was not precluded by the Florida proceedings from entertaining a child-custody petition in the State of Rhode Island and that such jurisdiction could be exercised without violating the UCCJA.[3] Asbell thereafter filed a petition for certiorari to this court, contesting the Family Court ruling. That petition was denied on November 16, 1979.

Following a hearing on Jordan's custody petition, the Family Court justice issued a decree finding both parents to be fit and proper persons to have custody of the children. The decree altered the Florida court's grant of custody of both children to Asbell by awarding joint custody to both parents with physical possession of the son, Arthur, granted to Jordan and physical possession of the daughter, Emily, granted to Asbell. The decree did not address the issue of child support but specifically left the matter open for future consideration.

Meanwhile, in Florida, Jordan, represented by new counsel, appealed from the Florida judgment of divorce. The Florida Second District Court of Appeals, in *Jordan v. Jordan*, 392 So.2d 927 (Fla. Dist. Ct.App.

1. The final judgment noted: "The Respondent, BURT A. JORDAN, was present during all proceedings in this cause except the hearing held on August 16, 1979. Notice was given to BURT A. JORDAN and his failure to attend is without excuse and voluntary on the part of the Respondent, BURT A. JORDAN."

2. To date Asbell has not received any payments pursuant to the child support or alimony provisions of the Florida judgment. According to the

most recent Florida judgment regarding child-support arrearages, as of December 31, 1988, Jordan owed $114,585.84 in child support and interest.

3. Although the Family Court determined that it had jurisdiction to entertain the custody petition, nowhere in the order was the Florida judgment declared null and void, nor was it declared invalid as a default judgment.

1980), affirmed the judgment of the Florida trial court with respect to child custody, child support, alimony, and attorney's fees.

On June 11, 1981, another hearing was held in the Rhode Island Family Court to address Jordan's motion to hold Asbell in contempt for violating the Family Court decree concerning custody because she continued to press for child-support payments pursuant to the Florida judgment. Jordan also sought an injunction to prevent Asbell from proceeding with her petition for arrearages under the Florida decree. Both parties were represented at the hearing.

On the same day the Florida court heard Asbell's motion to hold Jordan in contempt for failure to pay child support. Following the hearing, the Florida court modified its original support order to reflect the subsequent change in custody established by the Rhode Island Family Court. Specifically the court ruled that for the seven-month period that the children were in Rhode Island with Jordan, no child support was owed. Further, the Florida court abated Jordan's future support obligations regarding Arthur while he was living with Jordan. However, Jordan's support obligations regarding Emily were not abated, and a contempt order was issued against him.

On January 4, 1982, the Rhode Island Family Court issued an order relative to the hearing held on June 11, 1981. The Family Court justice determined that Asbell had voluntarily submitted herself to the jurisdiction of the Rhode Island courts with respect to custody and physical possession of the children. He further noted that Asbell stipulated that she would not pursue any contempt action against Jordan in the Florida courts with regard to custody of the children but that she specifically reserved her right to pursue any issues involving child support.[4] With regard to the issue of child support, the Family Court justice ordered that each party would be solely responsible for support of the child in his or her own possession, in spite of the existing Florida support order that provided that Jordan would continue to be respon-

sible for the support of Emily, while she remained in her mother's custody.

In January of 1988 Asbell brought a petition in the Twentieth Judicial Circuit for Collier County, seeking a judgment for arrearages against Jordan, claiming that he had made no child-support payments since the divorce. On April 14, 1988, a justice of the Rhode Island Family Court granted Jordan's request to issue a temporary restraining order barring Asbell from pursuing her petition for child-support arrearages in the Florida court. On December 8, 1988, yet another justice of the Rhode Island Family Court heard Jordan's motion for injunction and motion to hold Asbell in contempt. The rulings on these motions provide the basis for this appeal.

In a decision issued on April 28, 1989, the Family Court justice first considered whether the Rhode Island courts had the power to enjoin a domiciliary of another state from utilizing the courts of her own state. The Family Court justice determined that although Rhode Island did have authority to issue injunctive relief regarding the use of courts of another state, that power should be used "sparingly and only where the equities of a case clearly warrant such relief." She denied Jordan's motion for injunctive relief, reasoning that the Florida courts had obtained initial jurisdiction by way of the divorce and, further, that Florida did have personal jurisdiction over Asbell and Jordan.

The Family Court justice then considered whether the Rhode Island Court had jurisdiction, under the UCCJA, when, in 1981, it modified the Florida child-support order. She found that the previous Family Court justice had no subject-matter jurisdiction under the UCCJA to enter a child-support order for Emily and, further, had never acquired personal jurisdiction over Asbell regarding any issue of child support since Asbell never left Florida, had filed a special entry of appearance in Rhode Island to contest jurisdiction, and finally had never litigated the issue of support in Rhode Island. The Family Court justice then dis-

---

4. The transcript of the hearing held on June 11, 1981, reveals that Asbell, through counsel, ac-

knowledged the validity of the Rhode Island custody decree.

missed the remainder of the case for lack of jurisdiction. Jordan filed a timely notice of appeal.

▌ Jordan raises a number of arguments in support of his appeal. The pivotal issue, however, is whether the trial justice erred in denying Jordan's motion for injunctive relief. We believe denial of the motion was proper, although for different reasons from those set forth in the trial justice's decision.

Jordan strenuously argues that the Family Court justice improperly denied his motion for an injunction. Jordan's arguments are premised on the belief that since the Rhode Island court had already accepted and exercised jurisdiction (and in doing so, Jordan argues, rendered the prior Florida judgments a "nullity"), the trial justice improperly recognized the validity of the Florida judgments and therefore abused her discretion in refusing to enjoin Asbell from seeking enforcement of the Florida child-support judgment. Jordan further asserts that the orders entered by the Rhode Island court cannot now be set aside. He reasons that since Asbell was represented by counsel and fully litigated the issue of jurisdiction, she is now precluded by the law of the case doctrine, res judicata, collateral estoppel, and laches from challenging the validity of the Rhode Island judgments.

Asbell, on the other hand, now argues that the Rhode Island courts never obtained personal or subject-matter jurisdiction and thus had no authority to enjoin her from pursuing litigation in Florida.[5] Consequently Asbell reasons that the Rhode Island judgments are void *ab initio*.

The trial justice, in her decision, relied to a great extent upon the premise that the Rhode Island Family Court lacked jurisdiction under the UCCJA to entertain a child-support motion. She noted that § 15–14–3(3) of the UCCJA, which defines "custody determination," explicitly excludes decisions relating to child support or any other monetary obligations. Thus she

determined that the Family Court, in retaining jurisdiction under the UCCJA, was only empowered to render child-custody decisions. Accordingly, since no other basis of jurisdiction was cited by the Family Court, the trial justice determined that any order issued by the Family Court relating to child support payments should be declared null and void because of the lack of subject-matter jurisdiction.

In our decision in *Mesolella v. City of Providence*, 508 A.2d 661, 666 (R.I.1986), we noted that the term " 'subject matter jurisdiction,' when properly used, refers only to the court's power to hear and decide a case and not to whether a court having the power to adjudicate should exercise that power." As we noted in *Mesolella*, the distinction between the appropriate exercise of power and the absence of power is sometimes blurred. *See Hartt v. Hartt*, 121 R.I. 220, 397 A.2d 518 (1979). In fact, we believe the distinction has been blurred in the present case. General Laws 1956 (1985 Reenactment) § 8–10–3, as amended by P.L.1988, ch. 84 § 7, confers upon the Family Court the authority to consider matters relating to custody, child support, alimony, and various other problems incident to the breakup of the family. Moreover, when the Family Court initially claimed jurisdiction pursuant to the child-custody provisions of the UCCJA, it did so relying upon the emergency provisions of § 15–14–4(3), which gives the court jurisdiction, providing that

> "the child is physically present in Rhode Island and: (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he or she has been subjected to or threatened with mistreatment or abuse."

Without now addressing the merits of Jordan's claims, we recognize that the Family Court based its initial grant of jurisdiction on claims by Jordan that the children were being subjected to physical and emotional abuse by their mother in Flor-

---

**5.** With regard to Asbell's personal-jurisdiction claim, this court has recognized "that the UCCJA does not base the power of a court to hear and

decide a child-custody controversy upon in-personam jurisdiction over both parents." *See Pratt v. Pratt*, 431 A.2d 405, 409 (R.I.1981).

ida.[6] These allegations, coupled with the physical presence of the children in Rhode Island, clearly brought the matter within the jurisdictional provisions of the UCCJA. It follows then that once the Family Court has properly claimed jurisdiction to render a decision with regard to child custody, it would be difficult to deny the court the opportunity to resolve those issues that are peripheral to custody, such as child support. Thus we believe that the Family Court did have jurisdiction to decide the custody and support issues.

Since we believe that the Family Court could have properly claimed jurisdiction under the UCCJA, our focus becomes whether the court should have exercised that jurisdiction. Section 15-14-7 of the UCCJA states that a court *shall not* exercise jurisdiction if at the time of the filing of the custody petition a custody proceeding is pending in another state exercising jurisdiction substantially in conformity with the UCCJA. The Family Court justice who initially determined that Rhode Island had jurisdiction to entertain the custody matter did so in great part relying upon the provisions of § 15-14-5, which states that before issuing a decree, the court must give the parties a reasonable opportunity to be heard. The trial justice determined that the Florida court had not exercised jurisdiction substantially in conformity with § 15-14-7 since Jordan was not present or represented on the final hearing day and thus determined that Rhode Island could entertain jurisdiction. The Family Court justice was obviously persuaded by Jordan's argument that the Florida divorce judgment was in effect a default judgment since Jordan was neither present nor represented by counsel at the August 16, 1979 hearing. This reasoning ignores the fact that Jordan was offered his day in the Florida court. He filed a general appearance, answered pleadings, and conducted discovery. He participated in a lengthy trial, save for purposely absenting himself on the last hearing day, before invoking the jurisdiction of the Rhode Island courts.

But perhaps most importantly, Jordan has already contested the jurisdiction of the Florida court to proceed in his absence. In *Jordan v. Jordan*, 392 So.2d 927 (Fla. Dist. Ct.App.1980), the Florida District Court of Appeals, after a full hearing, affirmed the judgment of the Florida trial court with respect to child custody, child support, alimony, and attorney's fees. Accordingly Jordan has been given an opportunity to challenge the validity of the Florida judgment. Thus we are not persuaded by the reasoning of the original trial justice that Jordan was denied a reasonable opportunity to be heard, especially in light of his own actions in purposefully absconding from the jurisdiction of the Florida courts.

It is significant to note that our Legislature has clearly expressed its intent that the UCCJA should reduce jurisdictional competition and conflict. Section 15-14-2 is explicit in stating that its purpose is to promote cooperation with the courts of other states, to decline the exercise of jurisdiction when the child and his or her family have a closer connection with another state, to deter abductions and other unilateral removals, and to avoid relitigation.

In *Paolino v. Paolino*, 420 A.2d 830 (R.I. 1980), this court also recognized that the intent of the Legislature in enacting the UCCJA was to minimize jurisdictional competition and conflict so that custody decisions are rendered in the state best able to protect the welfare of the child.

■ In light of the statutory authority governing jurisdiction under the UCCJA, it seems apparent that the Family Court, in exercising jurisdiction, created a situation that opened the door for jurisdictional conflict while prolonging resolution of a case that had been settled in Florida over a decade ago. Accordingly we believe that although the Family Court did have jurisdiction to entertain the case, the exercise of that jurisdiction was improper. Thus, although the trial justice based her denial of the motion for injunctive relief on the

---

**6.** We should also note that Asbell in the Florida proceedings had made similar allegations against Jordan.

premise that jurisdiction was lacking, we hold that the denial of the motion for injunctive relief was proper. It is well settled that this court will uphold a correct decision notwithstanding the reasoning upon which it rests. *Empire Equipment Engineering Co. v. Sullivan*, 565 A.2d 527, 529 (R.I.1989).

Finally, in deferring to the Florida court's judgment with regard to the child-support decree, we note that Article 4, section 1, of the United States Constitution, the full faith and credit clause, requires that State Courts recognize judgments of the courts of sister states, provided the sister state's court properly exercised subject-matter and personal jurisdiction. *See also State of Maryland Central Collection Unit v. Board of Regents for Education of the University of Rhode Island*, 529 A.2d 144 (R.I.1987). Since Florida at all times during the divorce proceedings had subject-matter and personal jurisdiction, it would be error to conclude that the Florida judgment regarding child support should not be honored in Rhode Island.

For the reasons set forth above, the plaintiff's appeal is denied and dismissed. The decision of the Family Court is affirmed. The papers in the case may be remanded to the Family Court.