Peter G. DUFFY

v.

Wendy B. REEVES.

No. 91–590–Appeal.

Supreme Court of Rhode Island.

Feb. 1, 1993.

Patrick T. Conley, Jr., Lynch & Greenfield, Providence, Paul Pederzani, III, Warwick, for plaintiff.

Arthur Read, Gorham & Gorham, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from the Family Court's exercise of jurisdiction under the Uniform Child Custody Jurisdiction Act, G.L.1956 (1988 Reenactment) chapter 14 of title 15 (UCCJA), over a custody dispute between the two parties. We are called upon to review the assumption of jurisdiction by the Family Court under the emergency-jurisdiction procedure of the UCCJA, § 15–14–4(a)(3)(ii). The relevant facts are as follows.

The defendant, Wendy B. Reeves (Wendy) and plaintiff, Peter G. Duffy (Peter) were married on April 30, 1977, in the State of New York. Twelve years later, on July 3, 1990, the parties were divorced by a judgment of the New York Supreme Court. Subsequently Wendy married Duncan Reeves (Duncan) on or about February 10, 1991. They currently reside in Huntington, New York. Peter has resided in Rhode Island since 1988.

During the period of their marriage, Peter and Wendy had three children: Leigh, now aged fourteen, Jill, now aged thirteen, and Brian, now aged ten. The judgment of divorce awarded custody of these minor children jointly to both parents; however, the children were to reside with their mother, Wendy, in New York. Peter was to have specific visitation rights, including alternate holidays and three weeks during the summer. The current dispute concerns the custody of Brian, their youngest child.

At the end of the children's summer visit, Peter failed to return Brian to Wendy on July 5, 1991. On August 14, 1991, Peter filed a complaint under the UCCJA with the Family Court, requesting an ex-parte order for temporary custody of Brian. With his complaint Peter filed two affidavits, one from himself and one from Brian. In his affidavit Peter alleged that, according to statements made by Brian, Duncan had physically and mentally abused Brian. Peter alleged that Duncan had repeatedly spanked and slapped Brian and that Brian was fearful of returning to New York. Brian's affidavit corroborated Peter's statements. Brian stated that he told his father that he did not want to return to his mother because he was "unhappy and afraid to go back to New York." Brian said that he was unhappy because Duncan was "mean" to him and that when Brian has told Duncan that Duncan was not his father, Duncan hit him. Brian stated that he was afraid that Duncan and Wendy were going to "drag" him away from Rhode Island and that he was "really afraid to go back to New York" with them "for fear of more spankings or beatings."

On the basis of these affidavits the Family Court issued an ex-parte order that same day granting Peter temporary custody of Brian and restraining Wendy from removing Brian from Rhode Island for thirty days. The court then set a hearing for September 11, 1991, and issued a summons for Wendy. Peter mailed this summons to Wendy on August 15, 1991, via certified mail, return receipt requested, and it was received by Anne Reeves, Wendy's mother-in-law, at their residence on August 20, 1991.

Present at the hearing on September 11 were Brian, Peter, Wendy, and Duncan, as well as counsel for both parties. The trial justice proposed, without objection, to interview Brian in her chambers. Counsel for both sides were present and allowed to question Brian, even though Wendy's attorney was not admitted to practice in the State of Rhode Island and had not officially been given permission to enter her appearance pro hac vice. Also present was the court reporter.

The Family Court justice questioned Brian regarding his relationships with his stepfather, his father, and his mother. Brian testified to several spankings on his bare bottom given by Duncan that his mother witnessed. According to Brian, these spankings felt "like a donkey hit me

in the butt" and were precipitated merely by a look that Brian gave his stepfather or by Brian's telling Duncan that Duncan was not his father. Duncan had also threatened to break Brian's autographed hockey stick, and had hidden his Nintendo. Brian said that Duncan never disciplined his sisters in this way. When asked if he was afraid of Duncan, Brian stated that he was.

"THE COURT: Brian, if you were to go back to New York, would you be afraid of Duncan?

"BRIAN: Yes, I would never speak to him, because of the way he treats me. I don't want to speak to him.

"THE COURT: And, you would be afraid of what,—that Duncan would spank you again?

"BRIAN: Yes. Hard, physically hurt me again. Once he said he was going to hit me with a belt because that is what his father used to do, and once he wanted to see how I can handle that. He said that doesn't hurt because I used to get hit with a belt and I didn't cry."

Both attorneys then questioned Brian, after which the trial justice returned to the courtroom to deliver her opinion. The trial justice found, on the basis of Brian's testimony, that Brian was in "real fear of returning to New York," that the spankings were "an inappropriate method of discipline for the conduct that gave rise to that discipline," and that "to return Brian to New York with his mother and stepfather in the same situation that he left would be detrimental to Brian." The trial justice spoke of the harm that spanking does to a child's self-esteem and found that these spankings caused Brian "substantial emotional harm." Although the trial justice found that New York was the home state in this matter, she deemed that an emergency situation had arisen that would allow the Family Court to exercise emergency jurisdiction under the UCCJA. The trial justice continued the restraining order and scheduled a full hearing for October 7 without objection from either party.

According to defendant, this hearing was continued to November 11 at plaintiff's request. On October 15 Wendy retained local counsel and filed notice of appeal one week later. On October 22 the trial justice entered an order reflecting her decision of September 11 that granted Peter temporary custody of Brian and restrained Wendy from removing him from Rhode Island. The order also rescheduled the full hearing for December 2, 1991. That hearing was postponed by this appeal.

The defendant makes three arguments in her brief. First, Wendy claims that the Family Court never acquired in personam jurisdiction over her. Second, she contends that the Family Court incorrectly applied § 15–14–4 of the UCCJA. Finally, she argues that the hearing did not satisfy § 15–14–5 of the UCCJA.

■ Regarding personal jurisdiction, Wendy argues that she was not given proper notice under Rule 4(e)(1) of the Rules of Procedure for Domestic Relations for the Family Court of Rhode Island. Rule 4(e)(1) states that service of process upon an out-of-state individual may be made by personal delivery, "by mailing a copy of the summons and complaint to the individual by registered or certified mail, return receipt requested, or by any other method ordered by the court to give such individual notice of the action and sufficient time to prepare any defense thereto." Because plaintiff did not submit any affidavit that service was made, Wendy argues, the court did not have enough evidence of proper service. Peter argues in response that the notice was acceptable both under Rule 4(e) and under § 15–14–6, the notice provision of the UCCJA, which also allows service by certified mail or other method as long as service is made at least twenty days before any hearing. Peter submitted a certified mail receipt that he claimed was for service of process and which we accept as such. This item was mailed to Wendy and was received by her mother-in-law on August 20, 1991, more than twenty days in advance of the hearing.

■ However defendant was served, it is quite clear that the notice was sufficient and gave her adequate time to prepare since she was present at the hearing with counsel. *See Plushner v. Mills*, 429 A.2d

444 (R.I.1981). Wendy's appearance and participation gave the Family Court personal jurisdiction over her. Furthermore, the power of the Family Court under the UCCJA to decide a custody matter does not depend upon its having personal jurisdiction over the parties but is rather quasi in rem. *Pratt v. Pratt*, 431 A.2d 405, 409 (R.I.1981).

The defendant's second and main argument centers on the trial justice's application of § 15–14–4. Section 15–14–4 states in relevant part that "The family court has jurisdiction to make a child custody determination by initial or modification decree if * * * [t]he child is physically present in Rhode Island and * * * it is necessary in an emergency to protect the child because he or she has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent."

■ Wendy argues that because this statute leaves the terms "emergency," "mistreatment," or "abuse" undefined, the trial justice committed error by not clarifying and defining their meanings before applying them to the facts of this case. The defendant contends that spanking does not per se constitute abuse or mistreatment. She quotes Webster's Dictionary for support. Furthermore, Wendy claims that because the trial justice based her finding that Brian was emotionally scarred by these spankings solely on Peter's allegations, that finding is unsubstantiated and will not support jurisdiction under the UCCJA. Finally Wendy argues that for the Family Court to take jurisdiction in this case would contradict the UCCJA's purpose of minimizing jurisdictional conflict, promoting interstate cooperation, and preventing children from being subjected to disputes between jurisdictions.

We disagree with defendant's contentions. The contention that the terms "emergency," "mistreatment," and "abuse" must be defined is without merit. These words are not words of art but are in common, everyday use. A trial justice's decision concerning whether enough abuse existed to uphold the exercise of emergency jurisdiction must be made on a case-by-case basis. While we are fully aware of the need to minimize jurisdictional conflict, we must balance this purpose with the needs of the child. The Family Court is not powerless in this regard. "Even though the Rhode Island Legislature was certainly cognizant of the importance of the full faith and credit clause in dual-state custody matters * * * it retained in the Family Court the power to modify foreign child-custody decrees in a narrow range of circumstances." *Kretzer v. Kretzer*, 506 A.2d 81, 83 (R.I.1986).

■ Certainly in this case enough evidence of abuse existed to support setting the case down for a full evidentiary hearing. We upheld the initial exercise of emergency jurisdiction with less evidentiary support in *Jordan v. Jordan*, 586 A.2d 1080 (R.I.1991). There we stated that a parent's allegations of abuse when combined with the child's presence in Rhode Island "clearly brought the matter within the jurisdictional provisions of the UCCJA." *Id.* at 1084. In the instant case the child was present in Rhode Island. Furthermore the trial justice had more than simply parental allegations on which to base her decision. Brian personally testified that he was spanked several times in front of Wendy, who was unable to stop her husband, and that it felt "like a donkey hit [him] in the butt." Brian testified that Duncan threatened to beat him with a belt and to break his autographed hockey stick. All this harsh treatment, according to Brian, was imposed because Duncan did not like the way Brian looked at him or because Brian told Duncan that he was not Brian's father. Brian stated unequivocally that he was afraid to return to New York with Wendy and Duncan.

Furthermore, unlike *Jordan*, in the instant case there is no proceeding pending in another state. The New York court last considered this case in June of 1991. In *Jordan*, custody proceedings in Florida preceded and continued during the Rhode Island hearing. It should be noted that at the time of the New York custody decree Wendy had not remarried. Duncan's pres-

ence and behavior were not even considered by the New York court.

We therefore hold that the Family Court applied the provisions of § 15–14–4 properly and in accordance with the purposes of the UCCJA. We further hold that it would be improper to return Brian to a home environment that has changed since the initial custody order was issued, an environment which he fears greatly. The evidence presented at the initial hearing was more than sufficient to warrant a scheduling of a full hearing on the merits of future custody.[1]

■ Finally defendant argues that the hearing held by the Family Court did not satisfy § 15–14–5 of the UCCJA, which requires that "reasonable notice and opportunity to be heard" be given to the parties. The defendant contends that the hearing was deficient in several aspects: there was no review of whether this case fits within § 15–14–4, no opportunity for Wendy to present evidence, no analysis of the definition of an "emergency," no findings of fact that an emergency existed, no expert testimony regarding the harm of spanking, no discussion of how much weight Brian's opinion should carry in regard to whether he should or should not have been spanked,

no comment regarding the fact that New York had decided the custody issue only one year earlier, no discussion of New York's interest in the matter, and no discussion of how Peter came to have Brian in his physical possession. To this list of complaints Peter responds that Wendy had the opportunity to present other evidence but did not take advantage of it. Therefore, Peter argues, Wendy has waived these issues that are raised for the first time on appeal.

As we stated previously, a finding of emergency jurisdiction is an ad hoc factual decision within the discretion of the Family Court. The issues which defendant raises are not necessary for a jurisdictional decision. Rather such discussions should be saved for a full hearing on the merits. We dealt with this issue in a similar situation in *Silva v. Tucker*, 500 A.2d 947 (R.I.1985).

"Unlike other jurisdictional bases, emergency jurisdiction can be exercised solely on the child's presence in Rhode Island, §§ 15–14–4(a)(3)(ii), 15–14–4(b). When issuing a temporary emergency order, the court is not required to investigate the existence of other jurisdictional factors mentioned in § 15–14–4, nor must

---

1. In her brief, defendant complains that "[b]y the time this case is reached for oral argument, a year and one-third will have passed since Peter kept Brian after the end of the summer visitation * * *. It would be unfair for [Peter] to profit * * * from the delay caused by the Rhode Island litigation." We note that the Family Court has yet to hold a full hearing on this case and that no final order regarding custody has issued. This case must therefore meet the standard for interlocutory appeals set out in *Town of Lincoln v. Cournoyer*, 118 R.I. 644, 648, 375 A.2d 410, 412–13 (1977):

   "As a general rule, this court will not review interlocutory orders or decrees unless the case falls within either of two well-recognized exceptions. One exception was created by the Legislature. It allows an appeal from an interlocutory order directing a 'sale of real or personal property.' General Laws 1956 (1969 Reenactment) § 9–24–7. The other exception is decisional in origin, and under it we will review an order or decree which, although in a strict sense interlocutory, does possess such an element of finality that action is called for before the case is finally terminated in order to prevent clearly imminent and irreparable harm."

In the present case more harm has been done by the interlocutory appeal than if the case had gone on to full hearing. The jurisdictional hearing was held over a year ago. A full hearing was set for December 2, 1991. Had defendant waited until a final order was rendered (a delay of about two months), there may have been no need for this appeal. If one of the parties had then desired appellate review, that party could have appealed from a final order. As the matter now stands, defendant has lost a full year, during which time Brian has resided, gone to school and made friends in Rhode Island.

Although we have previously heard an interlocutory appeal on the subject of emergency jurisdiction in a UCCJA case (*Silva v. Tucker*, 500 A.2d 947 (R.I.1985)), the experience of this case leads us to the conclusion that it serves the interests of neither the child nor the parents to have the final determination postponed for such a long period. In all likelihood, save for extraordinary circumstances, we shall refuse to hear these interlocutory appeals in the future. In the event of extraordinary circumstances, a petition for certiorari should be filed.

it apply other provisions such as § 15–14–7 (simultaneous procedures in other states) or § 15–14–9 (jurisdiction declined by reason of conduct). This in-depth inquiry is carried out after a full hearing and would have been conducted on a priority basis in this case if the appeal had not been filed. In exercising emergency jurisdiction, a court is limited to protecting the child until a full-scope procedure can be conducted." 500 A.2d at 949.

Thus § 15–14–4(a)(3) does not require the Family Court to examine at the jurisdictional hearing the factors that the defendant cited but may wait for a full hearing on the merits to deal with them in depth. A jurisdictional hearing does not have to be exhaustive. It need only be "reasonable." In the instant case both sides had more than a sufficient opportunity to be heard to make their hearing "reasonable."

For the foregoing reasons this appeal is denied and dismissed. The assumption of jurisdiction by the Family Court is affirmed. The case is remanded for further proceedings consistent with this opinion.