## In re BOARD OF MEDICAL REVIEW INVESTIGATION.

### No. 80–556–Appeal.

Supreme Court of Rhode Island.

Aug. 10, 1983.

Scott Umsted, Jr., Newport, for petitioner.

James M. Jerue, Providence, for respondent.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the petitioner, Dr. Philip C. McAllister, from a Superior Court justice's denial of his petition to quash a subpoena duces tecum ordering the production of certain patient-treatment records.

The respondent, Board of Medical Review Investigation (the board), initiated proceedings pursuant to G.L. 1956 (1976 Reenactment) §§ 5–37.1–1 through 5–37.1–14, as enacted by P.L. 1976, ch. 244, § 1, to determine whether petitioner was guilty of unprofessional conduct. The allegations of unprofessional conduct included accusations that petitioner had prescribed controlled substances without conducting a required physical examination, that he had issued false prescriptions, and that he had failed to file required reports with the Division of Drug Control. In conjunction with a hearing on the charges against petitioner, respondent issued a subpoena duces tecum ordering him to appear before the board with the medical records of twenty-eight named individuals. The petitioner requested the Superior Court to quash the subpoena, arguing that the medical records consisted of confidential health-care information that is not subject to compulsory legal process.

This appeal presents for our review an apparent conflict between the powers and duties of the board in its capacity to investigate complaints of unprofessional conduct against physicians, as set out in §§ 5–37.1–1 through 5–37.1–14, as enacted by P.L. 1976, ch. 244, § 1, and the newly created patient-physician privilege contained in the Confidentiality of Health Care Information Act, §§ 5–37.3–1 through 5–37.3–11. The issue before us is whether or not the act

should be construed to prevent the subpoenaing of a physician's records of patient treatment during an investigation by the Board of Medical Review of alleged unprofessional conduct.

The Legislature created the Board of Medical Review and empowered it "to investigate all complaints and charges of unprofessional conduct against any licensed physician and to hold hearings to determine whether such charges are substantiated * * *." Section 5–37.1–3(2). In furtherance of this statutory directive the board has the authority to issue subpoenas "to compel the production of documents or other written records or the attendance of witness at any investigation or hearing." Section 5–37.1–9; *see* § 5–37.1–3(7) and (9). The board has the authority to issue sanctions upon finding the accused guilty of unprofessional conduct. Sections 5–37.1–12 and 5–37.1–13, as amended by P.L.1982, ch. 425, § 1.

On the other hand, the Confidentiality of Health Care Information Act (the act) was enacted by the Legislature to "establish safeguards for maintaining the integrity of confidential health care information that relates to an individual."[1] Section 5–37.3–2. Information from a patient's confidential health-care record is available to the board of medical review without a patient's consent for release or transfer. Section 5–37.3–4(b)(2), as amended by P.L.1981, ch. 282, § 1. However, § 5–37.3–6(a)(1), enti-

tled "Legal Process," provides that "[e]xcept as provided in subparagraph (2) hereof, confidential health care information shall not be subject to compulsory legal process in any type of proceeding * * * and a patient or his authorized representative shall have the right to refuse to disclose, and to prevent a witness from disclosing, his confidential health care information in any such proceedings." Subparagraph (2) provides five situations in which the exception from compulsory legal process and the privilege do not apply.[2] (None of these exemptions applies to the present case.) Nonetheless, § 5–37.3–7(e) specifies that

> "[n]othing in this chapter shall limit the authority, which may otherwise be provided by law, of the board of medical review to require a medical peer review committee to report to it any disciplinary actions or recommendations of such committee, or to transfer to it records of such committee's proceedings or actions, including confidential medical information, or restrict or revoke a physician's license to practice medicine, provided that in any such legal action personally identifiable confidential health care information shall not be used without written authorization of such person or his authorized representative or upon court order."[3]

The apparent conflict between § 5–37.3–4(b), which entitles the board to the release or transfer of confidential health-care infor-

---

**1.** "Confidential health care information" is defined as "all information relating to a patient's health care history, diagnosis, condition, treatment or evaluation obtained from a health care provider who has treated the patient." General Laws 1956 (1976 Reenactment) § 5–37.3–3(c), as amended by P.L.1979, ch. 221, §ƒ1.

**2.** Summarized, they are as follows:
  A.  When an individual introduces his physical or mental condition as an element of his claim or defense.
  B.  When, in a civil or criminal commitment proceeding, a physician determines that an individual is in need of treatment in a health-care facility for mental illness.
  C.  When a court finds that an individual, after having been informed that the commu-

nications would not be privileged, has made communications to a psychiatrist in the course of a court-ordered psychiatric examination.
  D.  When, in any court proceeding, it is demonstrated that the individual's physical or mental condition is an imminent and serious danger to the health of another person.
  E.  When, in a policy action involving the insured and the insurance carrier, it is demonstrated that the confidential health-care record is relevant.

**3.** An "authorized representative" is defined as "[a] person empowered by the patient/client to assert or waive the confidentiality, or to disclose or consent to the disclosure of confidential information * * *." Section 5–37.3–3(g)(1).

mation without a patient's consent, and § 5–37.3–6, which limits the instances in which confidential health-care information is subject to compulsory legal process, was perceptible in two cases decided by this court. *Compare State v. Anthony,* R.I., 440 A.2d 736 (1982), *with In re Grand Jury Investigation,* R.I., 441 A.2d 525 (1982). In *State v. Anthony,* the defendant was charged with the murder of his infant daughter. Prior to trial, a subpoena duces tecum was issued to the Department for Children and Their Families, seeking access to records pertaining to the child and her mother (the state's principal witness against the defendant). The trial justice granted the department's motion to quash the subpoena on the ground that disclosure was prohibited by §§ 5–37.3–1 through 5–37.3–10. This court held that the subpoena duces tecum should not have been quashed. *State v. Anthony,* R.I., 440 A.2d at 736. We were of the opinion that § 5–37.3–4(b)(4) did not prohibit disclosure of the records sought by the defendant in cases of known or suspected child abuse. *Id.* Moreover, we stated that the defendant's right to effective cross-examination was denied because the information may have been the defendant's only means of challenging testimony that led to his conviction. *Id.,* 440 A.2d at 736–37.

In *In re Grand Jury Investigation,* this court was presented with the issue of whether the act could prevent the subpoenaing of a physician's records of patient treatment during an investigation of alleged Medicaid fraud in which applicable federal law required disclosure. The trial justice had quashed two subpoenas duces tecum issued by a grand jury after determining that § 5–37.3–6 prohibited it from obtaining patient records in its investigation. We rejected the Attorney General's argument that an exception to § 5–37.3–6 should be inferred from § 5–37.3–4(b)(14), which provides that no consent is required for releasing confidential health-care infor-

mation when the release is to a law-enforcement authority in order to protect the legal interests of an insurance-support organization in preventing and/or prosecuting the perpetration of fraud. *In re Grand Jury Investigation,* R.I., 441 A.2d at 528. Stating that the absence of an exemption in § 5–37.3–6 made it difficult for us to infer one, even though the Legislature may not have intended the privilege to apply to the situation presented, we found that the section prohibited a grand jury from obtaining confidential health-care information by compulsory legal process. *Id.,* 441 A.2d at 528–29. However, we held that because federal law required disclosure, the supremacy clause dictated that the patient-physician privilege contained in the act could not prevent the grand jury from subpoenaing the records.

Apparently, in direct response to this opinion, legislation was introduced in the House.[4] The proposed bill was enacted as a subsection to § 5–37.3–4. *See* § 5–37.3–4(b)(15), as amended by P.L.1982, ch. 356, § 2. The new subsection stated that no consent for the release or transfer of confidential health-care information is required

> "[t]o a grand jury or to a court of competent jurisdiction pursuant to a subpoena or subpoena duces tecum when said information is required for the investigation or prosecution of criminal wrongdoing by a health care provider relating to his/her/its provision of health care services and said information is unavailable from any other source; provided however, that any information so obtained shall not be admissible in any criminal proceeding against the patient to whom said information pertains."

In the case at bar, the proceedings before the board were still in the preliminary stages. These preliminary proceedings are confidential until the hearing committee determines that the matter necessitates action

---

4. The *In re Grand Jury Investigation* decision was decided on February 9, 1982. The house bill was introduced March 11, 1982.

by the entire board. Section 5–37.1–6.[5] The stated purpose of the Confidentiality of Health Care Information Act is "to establish safeguards for maintaining the integrity of confidential health care information that relates to an individual." Section 5–37.3–2. The board is authorized to issue subpoenas to compel the production of documents or other written records at any investigation or hearing. Section 5–37.1–9; *see* § 5–37.1–3(7). Thus, the purpose of the act is not violated by the board's subpoenaing a physician's records of his patients during a board investigation of alleged unprofessional conduct on the part of the physician because the preliminary investigations are confidential. Section 5–37.1–6. Moreover, § 5–37.3–7(e) provides that nothing in the act shall limit the authority of the board to "restrict or revoke a physician's license to practice medicine, provided that in any such legal action personally identifiable confidential health care information shall not be used without written authorization of such person or his authorized representative or upon court order."[6] In the present case the board was still in the investigatory stage. Thus, § 5–37.3–7(e) necessarily implies that the patient-physician privilege shall not prevent the board from carrying out its investigation to determine if the charges of unprofessional conduct were substantiated. It is only when the board is in the process of revoking or restricting a physician's license that the privilege comes into play.[7]

By establishing the Board of Medical Review and authorizing it to investigate charges of unprofessional conduct against physicians, the Legislature manifested a desire to improve the quality of health-care services rendered in this state and to maintain a standard of professional ethics. By enacting the Confidentiality of Health Care Information Act, the Legislature has sought to encourage open disclosure of information from patient to physician so as to aid in the effective treatment of the patient. However, when a physician is under investigation for unprofessional conduct and the physician attempts to invoke the patient-physician privilege and to prevent the investigatory committee from obtaining records necessary to its investigation, it seems apparent that the injury to society's interest in probity within the medical profession is much greater than the injury done to the patient's interest in the privacy of his medical records. A physician under investigation for professional misconduct subverts rather than supports the rights of the patient by distorting the patient's privilege to serve his own ends. Indeed, it is highly questionable whether the petitioner has standing to invoke the patient's privilege. Consequently, the overall legislative policy would best be implemented by disclosure to the board.

For the reasons stated herein, the petitioner's appeal is denied, the order granting the subpoena duces tecum is affirmed, and the papers are remanded to the Superior Court for further proceedings consistent with this opinion. .

MURRAY, J., did not participate.

---

**5.** A majority of the members of the full board is required to find the accused guilty of unprofessional conduct. Section 5–37.1–12.

**6.** Arguably, the board could use the information if the information was not personally identifiable. Any confidentiality of a patient's records could be amply protected by keeping the patients' names confidential.

**7.** Only the patient or his authorized representative can claim the privilege. *See* §§ 5–37.3–4, –6, –7.