December 10, 2020

John F. Begg, D.D.S.               :

v.                                 :

Nicole Alexander-Scott, M.D., in her   :
capacity as Director for the State of
Rhode Island Department of Health,
et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

John F. Begg, D.D.S.       :

v.             :

Nicole Alexander-Scott, M.D., in her  :
capacity as Director for the State of
Rhode Island Department of Health,
et al.

Present: Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** This case came before the Supreme Court on October 8, 2020, pursuant to a writ of certiorari by the appellant, John F. Begg, D.D.S., who seeks review of an order and judgment of the Superior Court denying his administrative appeal from a decision of the Rhode Island Department of Health (DOH) in favor of the appellees, Nicole Alexander-Scott, M.D., in her capacity as Director of the DOH (Director); the Board of Examiners in Dentistry of the DOH (Board); and the DOH. Doctor Begg argues that the trial justice erred: (1) in finding that DOH was vested with subject-matter jurisdiction to pursue the underlying administrative proceeding in spite of the fact that DOH failed to comply with statutory notice provisions; (2) in finding that DOH can compel the

production of confidential patient records without a subpoena; and (3) in affirming DOH's suspension of the appellant's license to practice dentistry for two years, based on his refusal to produce confidential patient information. For the reasons stated in this opinion, we affirm the judgment of the Superior Court.

**Facts and Travel**

The appellant has been licensed to practice dentistry in Rhode Island since January 1, 1969; during the time period relevant to this case, he maintained a place of business at Lincoln Dental Associates (Lincoln Dental), located in Lincoln, Rhode Island. On March 21, 2018, appellant filed a Superior Court complaint and notice of appeal in accordance with the Administrative Procedures Act, G.L. 1956 § 42-35-15, challenging a decision and order of the Board concerning his dentistry practice. The complaint alleged that, in January 2016, Dr. Martin Nager performed an inspection of the records at Lincoln Dental, which led to the issuance of a two-count specification of charges against Dr. Begg. Count 1 alleged that Dr. Begg failed to conform to the minimal standards of acceptable practice in maintaining his patient records, and Count 2 charged Dr. Begg with failure to furnish the Board with full and complete information as requested by the Board.

A hearing committee of the Board conducted an evidentiary hearing on July 12 and October 4, 2017, including the presentation of documentary and testimonial evidence. The Board issued a written decision and order dated

February 7, 2018, which detailed the inspection of Dr. Begg's patient records and the shortcomings in those records, including missing documents and required records. The Board imposed sanctions for violations of G.L. 1956 §§ 5-31.1-10(19), (23), and (24), and §§ 25.1.1, 27.1(s), 27.1(x), and 27.1(w) of DOH's then-existing Rules and Regulations Pertaining to Dentists, Dental Hygienists, and Dental Assistants. Specifically, as to Count 2, the decision directed that Dr. Begg's license to practice dentistry be suspended for two years. As to Count 1—and before his license could be reinstated after the two-year suspension—Dr. Begg was required to engage in forty hours of continuing education, including twelve hours focused on record-keeping, the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA), and treatment planning records. In addition, he was required to arrange for an outside monitoring service to review his records for the first year after his reinstatement and to pay for certain costs and expenses arising out of the administrative proceedings. The Director adopted the decision and order of the Board in its entirety on February 13, 2018. Doctor Begg filed a timely appeal.

Before the Superior Court, Dr. Begg alleged the usual grounds for an administrative appeal: he argued that the decision was (1) in violation of constitutional, statutory, or ordinance provisions; (2) in excess of the Board's and DOH's authority; (3) made upon unlawful procedure; (4) affected by other error of

law; (5) clearly erroneous; and (6) arbitrary or capricious or characterized by abuse of discretion. Doctor Begg presented three arguments in support of his appeal. First, he asserted that "DOH never had subject matter jurisdiction to pursue the underlying administrative proceeding because it failed to comply with statutorily mandated inspection and notice protocols" by failing to leave a copy of the inspector's report with Dr. Begg prior to leaving Lincoln Dental. Next, appellant argued that, even if DOH was vested with subject-matter jurisdiction, its decision was flawed based on myriad reasons, as set forth in his complaint. Finally, he maintained that the sanctions imposed were "wholly disproportionate to the technical records keeping violations" with which he was charged.

The appellees argued that the Board's decision should be upheld because the Board was vested with subject-matter jurisdiction in accordance with § 5-31.1-11, and that there was no statutory support for appellant's argument that the notice provision created a "condition precedent for regulatory authority and action." The appellees also denied that they were required to seek information from Dr. Begg only by subpoena or patient consent, and they contended that appellant had misread § 5-31.1-4(6). Lastly, appellees argued that the sanction imposed was neither arbitrary, capricious, nor an abuse of power, and that the Board's decision was supported by competent evidence and not affected by error of law.

The trial justice entertained argument on April 26, 2018; on May 23, 2018, she delivered a bench decision denying the appeal and affirming the Board's decision. In rendering her decision, the trial justice indicated that she had reviewed the administrative record, particularly the hearing testimony of Dr. Nager; Linda Esposito, a DOH employee; Richard Beretta, Esq., Dr. Begg's prior attorney; and Mary Begg, Dr. Begg's office manager.

The trial justice summarized the testimony of Dr. Nager, noting that, after Dr. Nager's inspection, appellant provided the documents that Dr. Nager had reported as missing from the patient files, and that Dr. Nager insisted that those documents were not in the files when he had inspected them.[1] She also referenced the testimony of Ms. Esposito, who, at the direction of the investigative committee, requested the complete patient records from the files that Dr. Nager had examined

---

[1] The record before us discloses that Dr. Begg, Ms. Begg, and attorney Beretta were all present at Lincoln Dental during the inspection. Attorney Beretta had pulled ten patient files for Dr. Nager to review, but Dr. Nager declined to inspect those files and instead independently asked for the latest twelve or thirteen patient files to review. Attorney Beretta was present for the inspection and called Ms. Begg into the room once it began and when Dr. Nager noted the absence of HIPAA forms. After Dr. Nager concluded his inspection and left Lincoln Dental, attorney Beretta and Ms. Begg spoke about the missing HIPAA forms and periodontal charting information, and Ms. Begg began going through the files and insisted that the items were not missing. Two months later, after appellant received Dr. Nager's inspection report, attorney Beretta and Ms. Begg went through the files and allegedly pulled out and copied the documents that Dr. Nager reported as missing from the files. At appellant's insistence, the Board received these copies—which were compiled by attorney Beretta and Ms. Begg—and decided to request the full patient files in order to resolve the alleged discrepancies between Dr. Nager's report and appellant's subsequent production, to no avail.

and attorney Beretta had supplemented. Ms. Esposito testified that such a request was routinely made by the Board. The trial justice noted that attorney Beretta subsequently rejected Ms. Esposito's records request because the Board had not sought the records by subpoena. She cited Ms. Begg's testimony that it was only after Dr. Nager had completed his inspection and left Lincoln Dental that Ms. Begg located all but one of the missing documents in the patient files and provided that information to attorney Beretta. The trial justice reviewed the charges issued against Dr. Begg, the procedural history of the case, the claims of error, and the standard of review. She then rejected the administrative appeal.

As to the appellant's contention that the Board was without subject-matter jurisdiction over this case because appellees failed to follow the allegedly mandatory inspection and notice provisions set forth in § 5-31.1-11(b)(3), the trial justice found that, although a report was not left with Dr. Begg on the day of the inspection, one was provided "in short order." As such, she found that the "failure to leave a particular list behind on that day" did not deprive appellees of subject-matter jurisdiction because the statutory requirement was directory, not mandatory, and could not result in a loss of subject-matter jurisdiction.

Next, the trial justice addressed appellant's claim that the decision "was erroneous in view of the reliable, probative, and substantive evidence that was presented." First, she found that the Board had "accepted the testimony of Dr.

Nager" about his inspection—"which they had every right to do"—and that it was well within the Board's authority to find that Dr. Begg had violated the relevant regulatory and statutory provisions in failing to maintain proper patient records.

Turning to the argument that appellant could decline the Board's request for the complete patient files in the absence of a subpoena, the trial justice found that, although § 5-31.1-4 gives the Board subpoena power and "as much as it may be the better practice" to issue a subpoena, the Board was not required to do so. Accordingly, she found that Dr. Begg did not "have the authority to refuse" the Board's record request and "that there was, in fact, sufficient evidence to support the finding as it relates to Count 2."

Finally, as to Dr. Begg's position that the sanctions levied against him were arbitrary and capricious, the trial justice acknowledged that the Superior Court could not "substitute its judgment for what should be an appropriate sanction[,]" and that the court's function was to determine whether there was "legally competent evidence to support an agency's decision," including the sanction. She then went on to acknowledge that "on first blush, th[e sanction] did seem harsh[,]" but she added that "there were other things going on[,]" including the fact that Dr. Begg's files previously had been inspected in 2014 and he was "found to have deficient recordkeeping[,]" that there had been a complaint from a former

employee,[2] and that he "refused to provide the investigating committee with a complete set of patient files[.]" The trial justice also noted that Dr. Nager concluded—as a result of his inspection of Dr. Begg's patient files—"that there were twelve files [inspected] and almost all of them had one, if not several, recordkeeping deficiencies[,]" and that Dr. Begg ultimately "decided to discontinue cooperating with the investigation." Accordingly, the trial justice concluded that Dr. Begg failed to meet his burden of proof on all claims under § 42-35-15, and she denied the appeal.

The trial justice granted Dr. Begg's motion to stay the decision pending review by this Court. Final judgment entered in favor of appellees. This Court granted Dr. Begg's petition for writ of certiorari on November 19, 2018. For the following reasons, we reject Dr. Begg's appellate contentions.

### Standard of Review

This Court's review of a judgment of the Superior Court in administrative proceedings "is limited to questions of law." *Iselin v. Retirement Board of Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1048 (R.I. 2008) (quoting *Rossi v. Employees' Retirement System*, 895 A.2d 106, 110 (R.I. 2006)). As such, "questions of law—including statutory interpretation—are reviewed *de*

---

[2] The record reflects that on May 13, 2015, DOH received a complaint from a former employee of Dr. Begg, alleging that she voluntarily left her position at Lincoln Dental in March 2015 due to "unsafe working conditions and safety and health violations."

*novo*." *City of Pawtucket v. Laprade*, 94 A.3d 503, 513 (R.I. 2014) (quoting *Iselin*, 943 A.2d at 1049). In doing so, "we apply the 'some' or 'any' evidence test and review the record to determine whether legally competent evidence exists to support the findings." *Endoscopy Associates, Inc. v. Rhode Island Department of Health*, 183 A.3d 528, 532 (R.I. 2018) (internal quotation marks and brackets omitted) (quoting *Sartor v. Coastal Resources Management Council*, 542 A.2d 1077, 1083 (R.I. 1988)). This Court does not "weigh the evidence, but rather determine[s] whether the trial justice was legally justified" in his or her decision. *Id.* (quoting *Interstate Navigation Co. v. Division of Public Utilities and Carriers*, 824 A.2d 1282, 1286 (R.I. 2003)).

## Analysis

Before this Court, appellant asserts three claims of error. First, he claims that DOH lacked subject-matter jurisdiction over the administrative proceedings due to its failure to comply with the allegedly mandatory inspection and notice protocols set forth in § 5-31.1-11. Second, he argues that § 5-31.1-4 requires appellees to seek confidential patient healthcare information by subpoena and they may not demand production of such information through informal letter requests. Finally, he asserts that the sanctions imposed were wholly disproportionate to the charge and were therefore arbitrary, capricious, and an abuse of discretion. We address each of these arguments *seriatim*.

## A

## Subject-Matter Jurisdiction

The appellant first asserts that "the Board failed to satisfy the statutory prerequisites to obtaining subject matter jurisdiction" because it "failed to provide the statutorily mandated inspection report at the conclusion of inspecting Dr. Begg's office[.]" In making this argument, Dr. Begg relies on the language of § 5-31.1-11(b)(3), which provides that "[a]t the conclusion of the inspection and prior to leaving the dental office premises the board inspectors shall provide the dentist whose office has been inspected with a copy of the completed inspection form, noting areas of deficiency or follow-up[.]" Doctor Begg argues that because § 5-31.1-11(b)(3) uses the word "shall," and, he contends, the statute "is penal in nature[,]" compliance is mandatory. According to appellant, because DOH failed to comply, the Board was divested of subject-matter jurisdiction. We reject this contention.

It is well settled by this Court that "[a] claim of lack of subject-matter jurisdiction 'questions the very power of the court to hear the case.'" *Rogers v. Rogers*, 18 A.3d 491, 493 (R.I. 2011) (quoting *Pine v. Clark*, 636 A.2d 1319, 1321 (R.I. 1994)). However, we have recognized "a distinction between subject-matter jurisdiction and the authority of the court [or tribunal] to proceed." *Gallop v. Adult Correctional Institutions*, 182 A.3d 1137, 1142 (R.I. 2018). The appellant has

incorrectly identified the issue in this case as an issue of a lack of subject-matter jurisdiction.[3]

By enacting chapter 31.1 of title 5 of the general laws, the General Assembly specifically vested jurisdiction in the Board to, *inter alia*,

> "investigate all complaints and charges of unprofessional conduct against any licensed dentist, * * *
> "[t]o appoint one or more dentists * * * to act for the members of the board in investigating the conduct or competence of any licensed dentist, * * *
> "[and t]o direct the director to revoke, suspend, or impose other disciplinary action[.]" Sections 5-31.1-4(2), (4), (5).

Thus, contrary to Dr. Begg's assertions, appellees are charged with the responsibility of overseeing proceedings stemming from complaints against licensed dentists, including conducting investigations, reaching factual conclusions, and imposing appropriate discipline. Section 5-31.1-4. The issue in this case is not whether the Board is vested with subject-matter jurisdiction over licensed dentists, but, rather, whether in light of the procedural requirements of § 5-31.1-11(b)(3) the Board has the authority to adjudicate the charges levied against appellant. *See Rogers*, 18 A.3d at 493 (recognizing that once a tribunal's

---

[3] At oral argument, counsel for appellant valiantly attempted to reframe the issue into one of lack of authority to proceed with the prosecution rather than lack of subject-matter jurisdiction; that is, counsel argued that the failure to comply with G.L. 1956 § 5-31.1-11(b)(3) deprived DOH of the authority to continue any disciplinary proceedings. We are of the opinion that the Board was, in this circumstance, authorized to investigate and adjudicate the charges against appellant.

"subject-matter jurisdiction properly has been invoked, it is virtually impossible to divest the [tribunal] of such jurisdiction").

In § 5-31.1-11(b)(3), the General Assembly prescribed that, when the Board undertakes an inspection of a dental office, "[a]t the conclusion of the inspection and prior to leaving the dental office premises the board inspectors shall provide the dentist whose office has been inspected with a copy of the completed inspection form, noting areas of deficiency or follow-up[.]" In determining whether a particular statutory provision is mandatory or directory in nature, this Court has "consistently taken the position that the intention of the Legislature controls[.]" *State v. Carcieri*, 730 A.2d 11, 15 (R.I. 1999).

Although "use of the word 'shall' contemplates something mandatory or the imposition of a duty[,]" *In re Estate of Chelo*, 209 A.3d 1181, 1184 (R.I. 2019) (quoting *Castelli v. Carcieri*, 961 A.2d 277, 284 (R.I. 2008)), "where the language [of a statute] is directed at public officers or where the [L]egislature does not provide a sanction for the failure to meet that requirement," the statute may be deemed directory "so long as substantial rights of the parties are not prejudiced." *Whittemore v. Thompson*, 139 A.3d 530, 548 (R.I. 2016); *see Cummings v. Shorey*, 761 A.2d 680, 685, 686 (R.I. 2000) (finding statute that provided that tax assessors "shall certify, in writing, to the department of administration * * * when the [townwide] revaluation is completed" to be directory). Accordingly, where "the

- 12 -

act is performed but not in the time or in the precise manner directed by the statute, the provision will not be considered mandatory if the purpose of the statute has been substantially complied with and no substantial rights have been jeopardized." 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 25:3 at 587-88 (7th ed. 2007).

In the case at bar, the plain language of § 5-31.1-11(b)(3), when viewed in the context of the entire statutory scheme, including the powers and duties delegated to the Board, leads us to conclude that the requirement to leave a copy of the inspection form before leaving the dental office is directory. First, the notice provision is directed at a representative of the state. *See West v. McDonald*, 18 A.3d 526, 535 (R.I. 2011) (recognizing that statutory provisions aimed at public officials are often directory because "it is deemed preferable not to prejudice private rights or the public interest where the fault for delay rests with a public officer" (quoting *Town of Tiverton v. Fraternal Order of Police, Lodge No. 23*, 118 R.I. 160, 164-65, 372 A.2d 1273, 1275 (1977))). In addition, a public official's failure to adhere to the notice provision does not carry a sanction in the statutory scheme, nor does the notice provision represent the essence of the enactment, but rather serves as "a guide for the conduct of business and for orderly procedure, rather than a limitation of power[.]" Singer & Singer, § 25:3 at 584. Finally, no substantial rights of appellant were prejudiced because, as found by the trial

justice, Dr. Begg was provided with a copy of the inspection report "in short order[,]" and his attorney followed up with that report by providing the Board with additional materials. It is clear that the trial justice did not err in declaring the language of § 5-31.1-11(b)(3) to be directory rather than mandatory. Accordingly, although Dr. Nager failed to leave a copy of his inspection report with Dr. Begg prior to leaving Lincoln Dental, this procedural defect did not deprive appellees of the authority to investigate and adjudicate the charges against Dr. Begg.

**B**

**Subpoena Requirement**

Next, appellant argues that the trial justice erred in affirming the decision with respect to Count 2 because, he alleges, "DOH failed to *legally* request confidential patient documents from Dr. Begg." Based on our review of the record, it is clear that the Board did not utilize the subpoena power provided to it by §§ 5-31.1-4 and 5-31.1-14 in its May 25, 2016 request for the complete patient records, nor was it required to do so. The May 25, 2016 letter requesting copies of the entire patient files which Dr. Nager reviewed was precipitated by appellant's counsel appearing at DOH on May 4, 2016, with copies of selective documents allegedly retrieved from those files, including HIPAA forms and periodontal charting information. These were the very documents Dr. Nager had found to be missing during his inspection. Clearly, the contents of the patient files reviewed by

Dr. Nager and the documents provided by appellant's counsel fall within HIPAA. However, appellant had no objection to producing those documents favorable to his defense, and in fact did so voluntarily.

It was not until the Board requested the complete patient files that appellant objected to producing the records and raised the subpoena requirement as a protective shield. Thus, it was reasonable for the Board to conclude that appellant was willing to produce those patient files he deemed helpful to him, but declined to otherwise cooperate with the Board's investigation and produce the full patient files. Moreover, appellant's counsel's six-page June 21, 2016 response to the Board's May 25, 2016 letter manifested an intent to refuse to comply with the Board's request even in the face of a subpoena. The response indicated that the Board had "no valid legal basis" to request the patient files and "lack[ed] authority to request a second review" of the patient files, and that the request violated both federal and state law. Nowhere in the response did appellant indicate that he would acquiesce to the Board's request if a subpoena was issued. Nevertheless, we are of the opinion that the Board is not required to utilize its subpoena power to obtain confidential healthcare records in conducting its investigation.

The Legislature created the Board and vested it with the power to "investigate all complaints and charges of unprofessional conduct against any licensed dentist[.]" *See* § 5-31.1-4(2). In furtherance of this objective, the Board

and its committees are authorized to "issue subpoenas * * * in connection with any investigations, hearing, or disciplinary proceedings" to compel production of documents, written records, and the attendance of witnesses at an investigative hearing. Section 5-31.1-4(6)(i). As noted by the trial justice, while it may have been preferable for the Board to have issued a subpoena in the present case, there is nothing in the statutory scheme that requires it to do so. Accordingly, based on the clear and unambiguous language of § 5-31.1-4, the Board could compel appellant to produce patient records with a subpoena, but it was not required to do so.

By establishing the Board and authorizing it to investigate and adjudicate charges of unprofessional conduct against dentists, "the Legislature manifested a desire to improve the quality of health-care services rendered in this state and to maintain a standard of professional ethics." *In re Board of Medical Review Investigation*, 463 A.2d 1373, 1376 (R.I. 1983) (discussing the Board of Medical Review, which is now referred to as the Rhode Island Board of Medical Licensure and Discipline). When a medical review board undertakes an investigation, "it seems apparent that the injury to society's interest in probity within the medical profession is much greater than the injury done to the patient's interest in the privacy of his [or her] medical records." *Id.*

The significance of the Board's investigatory powers is also recognized in the Confidentiality of Health Care Communications and Information Act, G.L. 1956 chapter 37.3 of title 5, which specifically provides that "[n]o consent for release or transfer of confidential healthcare information shall be required" to disclose patient information to the Board. Section 5-37.3-4(b)(2).  As such, based on the plain language of the statutory scheme and the overall legislative policy, we find that the trial justice did not err in finding that appellees were not required to subpoena the records from Dr. Begg.  The Board made a reasonable request for the full patient files after appellant had produced the very records he claimed were privileged, and the Board was not required by statute or otherwise to subpoena the records.

## C

### Sanctions

Finally, Dr. Begg submits that the two-year suspension of his license and the mandate that he pay the cost of a monitoring service and submit quarterly reports for the violation of § 5-31.1-10(23) in Count 2 was an abuse of discretion. Specifically, Dr. Begg maintains that the "sanctions levied upon [him] by the DOH are patently extreme, arbitrary and capricious."  In support of this contention, Dr. Begg relies on the fact that DOH has never "revoked a dentist's license for record

keeping and production issues[,]" and that "such a harsh penalty" must be reserved for the most extreme cases. We disagree.

In accordance with § 5-31.1-17, if a licensee "is found guilty of unprofessional conduct as defined in § 5-31.1-10, the director, at the direction of the board, shall impose one or more of the [enumerated] conditions[.]" Among other sanctions, the Board is authorized to "[s]uspend, limit, or restrict his or her license * * * to practice dentistry[.]" Section 5-31.1-17(2).[4]

It is undoubtedly within the Board's power to suspend and limit the practice of dentistry in an appropriate case. This is one such case. Doctor Begg is not a stranger to DOH. We are satisfied that the Board relied upon competent evidence to support its decision to suspend Dr. Begg's license for two years and to require him to pay for a monitoring service and submit quarterly reports. Specifically, in crafting the sanctions, the Board considered Dr. Begg's "own disciplinary history and the severity of his violations as well as what would be an effective and appropriate sanction." The Board observed that Dr. Begg's record-keeping was found to be deficient both in 2014 and in 2016, and that he refused to furnish the Board with information it had legally requested. The Board noted that the refusal

---

[4] The Board also is authorized to require the licensee "to serve a period of probation subject to certain conditions and requirements," G.L. 1956 § 5-31.1-17(3), or to "[r]equire him or her to practice under the direction of" another dentist for a period of time. Section 5-31.1-17(7).

was "very serious[,]" because "[s]uch action by a licensee serves to thwart a statutory and regulatory investigation" and "inhibits and prevents the investigating committee from doing what it is charged to do[.]"  Accordingly, based on the record before us, we conclude that legally competent evidence exists to support the sanctions imposed by the Board.

## Conclusion

The judgment of the Superior Court is affirmed.  The papers may be remanded to the Superior Court with our decision endorsed thereon.



## STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | John Begg, D.D.S. v. Nicole Alexander-Scott, M.D., in her capacity as Director for the State of Rhode Island Department of Health, et al. |
| **Case Number** | No. 2018-155-M.P. (PC 18-1873) |
| **Date Opinion Filed** | December 10, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For Appellant: <br><br> Jackson C. Parmenter, Esq. <br> Joelle C. Rocha, Esq. <br> Michael Resnick, Esq. |
| | For Appellees: <br><br> Joseph K. Alston, Esq. |